# CHARLESTON.

HOOPES *v.* DEVAUGHN *et al.*

Submitted February 4, 1897—Decided April 24, 1897.

1. FORGED DEED—*Cancellation—Equity Jurisdiction—Title*.
   A suit in equity to annul a forged deed of land, and have it canceled, and the record of it declared void, brought by the legal owner of the land, who is the grantor named in the forged deed, or the party holding title from such grantor, who institutes suit to annul such forged deed while he is out of possession, is not taken out of equitable jurisdiction by the fact that the deed is void. It is not necessary, before bringing such suit, that the legal owner should establish his title and obtain possession of the land by ejectment at law. (p. 452.)

2. DEPOSITIONS—*Non-Resident Witness—Affidavit*.
   The deposition of a non-resident witness, taken without the affidavit required by section 34 of chapter 130 of the Code, can be read upon the trial, if it appears from the depositions themselves that the witnesses were non-residents of the State at the time their depositions were taken. (p. 453.)

3. RETURN OF SHERIFF—*Amendment—Depositions*.
   If a sheriff has made a return upon a notice to take depositions which, through inadvertence or mistake, is not in accordance with the facts, the court will be liberal in allowing him to amend his return, and when amended it will relate back to the date of the original return. (p. 455.)

Appeal from Circuit Court, Wood county.

Bill by Cyrus Hoopes against Nancy Devaughn and William Devaughn and others. Decree for plaintiff, and the Devaughns appeal.

*Affirmed.*

JAS. HUTCHINSON and V. B. ARCHER, for appellants.

DAVE D. JOHNSON, for appellee.

ENGLISH, PRESIDENT:

On the 1st Monday in October, 1891, Cyrus Hoopes filed his bill in the Circuit Court of Wood county, in which he represented that on February 14, 1865, George S. Riley and wife conveyed to one J. S. Plumley, of Chester County, Pa., a tract of land situated on Kite's Run, in said

county of Wood, containing one hundred and thirty-seven acres and ninety-eight poles, a certified copy of which deed was exhibited with his bill. The plaintiff further alleged that while said deed was made to J. S. Plumley, investing him with the legal title to said land, the equitable title was in the plaintiff, who was the legal owner thereof, said Plumley being his agent. Plaintiff further alleged that on the 11th of June, 1891, said Plumley conveyed said tract of land to plaintiff, which deeds were exhibited with the plaintiff's bill. The plaintiff further alleged that Nancy Devaughn conspired with her husband, William Devaughn, and caused a cloud to be put upon the plaintiff's title to said land; that he finds of record in the clerk's office of Wood county what purports to be a deed for said land from J. S. Plumley, of State of Ohio, Washington county, to Nancy Devaughn, purporting to convey said tract of one hundred and thirty-seven acres and ninety-eight poles of land, but that said pretended deed is fraudulent and void. Plaintiff further says that he had never seen said original deed of conveyance, but he is informed, believes, and so charges that said pretended deed was made, executed, and delivered for record by said William Devaughn, who forged the same; that the said William Devaughn, husband of said Nancy Devaughn, had said original deed prepared, and, with the same in his possession, went to the office of W. G. Bartholow, clerk of the court of common pleas, Washington County, Ohio, in the city of Marietta, and then and there, in the presence of said Bartholow, represented himself to be J. S. Plumley, and then and there signed the name of J. S. Plumley to said deed, and acknowledged the same as J. S. Plumley before said Bartholow; that said Devaughn afterwards delivered said forged and fraudulent deed to the clerk of Wood County, and had the same duly recorded, and received the same back from said clerk, since which time the plaintiff has not seen it, nor has he ever seen it, but the plaintiff says said pretended deed was forged and fraudulent, and passed no title to the said grantee therein; that said Plumley, to whom said land was conveyed, was then, and always has been since, a resident of Chester County, Pennsylvania, and that he never did execute, make, or deliver said deed, nor any deed, for said land to

said Nancy Devaughn, nor to any one other than the plaintiff, nor did he ever authorize any one else to do so. Plaintiff further alleges that said forged and fraudulent deed, recorded as aforesaid, is a cloud upon his title to said land, and he is advised that he has a right to come into a court of equity, to have said cloud removed, by having said forged and fraudulent deed declared fraudulent and void, and he exhibits a certified copy of the same. Plaintiff further says that said Nancy Devaughn has been attempting to take possesion and control of. said land under said fraudulent deed, and is even now pretending to be the owner thereof, and to exercise rights of ownership thereof. The plaintiff, therefore, prays that said Nancy Devaughn and William Devaughn, her. husband, and the said J. S. Plumley, may be made parties defendant in this suit, and that they be required to answer the bill; that the said Nancy Devaughn and William Devaughn may be enjoined and restrained from exercising any control or acts of ownership over said land, or from in any wise interfering with the plaintiff's right and ownership thereof; that the said false and fraudulent paper, purporting to be a deed of conveyance from J. S. Plumley to Nancy Devaughan, dated the 16th of October, 1890, and recorded in Deed Book 67, p. 52, in the office of the clerk of the county court of Wood County, might be set aside, cancelled, and annulled, and declared fraudulent and void, and the cloud created thereby upon the plaintiff's title might be removed from the same, and for general relief.

The defendants Nancy Devaughn and William Devaughn filed their joint demurrer to the plaintiff's bill for want of equity therein. They also filed their joint answer to said bill, putting in issue the material allegations thereof. Said J. S. Plumley also filed his separate answer to said bill, admitting the material allegations thereof. Depositions were taken by both plaintiff and defendants, and on the 28th day of February, 1894, a decree was rendered in the cause granting leave to the plaintiff to have the sheriff to amend his return upon the notice to take the depositions of W. G. Bartholow and others attached to the deposition of said Bartholow filed in the cause as to the service thereof on the defendant Nancy Devaughn, by delivering a copy thereof to her husband, and by inserting in said re-

turn the words, "And explain the purport thereof to him"; and thereupon the said sheriff, in open court, made said amendment of said return.

The cause was heard upon the bill, answers, replications thereto, depositions taken in the cause, and upon exceptions indorsed upon the depositions of J. S. Plumley, Harvey Williamson, and Amos Williamson, taken on behalf of the plaintiff, and filed November 8, 1893; on consideration whereof the court overruled exceptions to the depositions of Harvey Williamson, and decreed that the plaintiff was entitled to the relief prayed for in the bill, and that the pretended deed purporting to have been made by J. S. Plumley to Nancy Devaughn, dated October 16, 1890, and recorded in Deed Book 67, p. 52, in the office of the county clerk of the county court of Wood County, was fraudulent and void, and was never executed by said J. S. Plumley, and that the plaintiff was entitled to have the same canceled, set aside, and annulled, and to have the cloud upon his title to the tract of land in the bill and proceedings created by said pretended deed removed, which was decreed accordingly; and from this decree William Devaughn and Nancy Devaughn applied for and obtained this appeal, assigning as the first error that the court erred in overruling their demurrer to plaintiff's bill, as there was no equity in it.

It is contended by counsel of appellants that a court of equity cannot afford the relief prayed for in this case upon the allegations contained in the bill, on the ground that it is not alleged that the plaintiff was in possession of the land in controversy, citing the case of *Christian* v. *Vance*, 41 W. Va. 754 (24 S. E. 596), in which it is held that a bill in chancery cannot be maintained by a person holding a deed for, but out of possession of, a certain tract of land to cancel as a cloud on his title the deed of another claimant (not a tax deed), who may be in possession of such land. Now, so far as the possession of said tract of land is concerned, while it is true that the bill does not affirmatively allege that the plaintiff is in possession thereof, yet he does allege that he holds a deed therefor which confers on him the fee-simple title thereto; and the bill further alleges that the defendant Nancy Devaughn has been attempting to take possession and control of said land under said

fraudulent deed, which allegation creates a strong inference that said Nancy Devaughn was not in possession of said land. This case, however, is not ruled by our decision in the case of *Christian* v. *Vance*, 41 W. Va. 754 (24 S. E. 596), but is distinguished therefrom for the reason that a cursory glance at the plaintiff's bill discloses the fact that the real object thereof is to set aside and annul the deed executed and acknowledged in Marietta, Ohio, for the reason that the same was a forgery, and for that reason was fraudulent and void. It may be that the 'plaintiff in attaining this object will, as an incident thereto, remove a cloud from his title to said tract of land; but still there can be no question that equity has jurisdiction to set aside a deed which has been procured by fraud, and it is well settled that a court of equity, having obtained jurisdiction for one purpose, will go on and adjudicate the whole merits of the cause. So we find it stated by Story in his Equity Jurisprudence (section 456, vol. 1) as follows: "The doctrine now generally (perhaps not universally) held in America is (as we have seen) that in all cases where a court of equity has jurisdiction for discovery, and the discovery is effectual, that becomes a sufficient foundation upon which the court may proceed to grant full relief. In other words, where the court has legitimately acquired jurisdiction over the cause for the purpose of discovery it will, to prevent multiplicity of suits, entertain the suit also for relief." The same author in section 184, same volume, says: "Let us now pass to another great head of concurrent jurisdiction in equity, that of frauds. And here it may be laid down as a general rule, subject to few exceptions, that courts of equity exercise a general jurisdiction in cases of fraud, sometimes concurrent with and sometimes exclusive of other courts." And in section, 439 p. 440, same volume, the author says: "The beautiful character or prevailing excellence, if one may so say of equity jurisprudence, is that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes. Thus (to present a summary of what has been already stated), if conveyances or other instruments are fraudulently or improperly obtained, they are decreed to be given up and canceled." The law on this question is also stated by Pom-

eroy in his work on Equity Jurisprudence (volume 1, § 181) as follows: "The concurrent jurisdiction of equity to grant remedies which are legal, in cases which might come within the cognizance of the law courts, is materially affected by the operation of two important principles, which are now merely stated, and which will be more fully discussed in a subsequent section. The first of these principles is that, when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. For this reason, if the controversy contains any equitable feature, or requires any purely equitable relief, which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights and grant legal remedies, which would otherwise be beyond the scope of its authorities." This question was before this Court in the case of *Hall* v. *Wilkinson*, 35 W. Va. 167 (12 S. E. 1108), which was a suit brought for the purpose of setting up a lost instrument, and for other purposes, and it was there held (first point of syllabus) that "equity has jurisdiction wherever a lost instrument is to be set up, notwithstanding courts of law now exercise jurisdiction in the same case"; and (in second point of syllabus) "in such a case, a court of chancery having jurisdiction for one purpose will adjudicate the whole merits of the cause." So, also, in the case of *Bunce* v. *Gallagher*, 5 Blatchf. 581, (Fed. Cas. No. 2,133), it is held that "a suit in equity to annul a forged deed of land, and have it canceled, and the record of it declared void, brought by the legal owner of the land, who is the grantor named in the forged deed, while he is out of possession of the land, is not taken out of equitable jurisdiction by the fact that the deed is void. It is not necessary, before bringing such suit, that the legal owner should establish his title, and obtain possession of the land by ejectment at law." In the case of *De Camp* v. *Carnahan*, 26 W. Va. 839, this Court held that "a court of equity has a right to cancel a deed which is a cloud upon the title of one out of possession of the land." On this point see, also,

*Bushnell* v. *Harford*, 4 Johns. Ch. 301, and *Paper Co.* v. *O'Dougherty*, 81 N. Y. 474. In view of these authorities, I conclude that the court committed no error in overruling the demurrer to the plaintiff's bill for want of equity.

The second error relied on by the appellants pertains to the action of the court in overruling the exceptions to the depositions taken in behalf of the plaintiff on account of the failure to file the proper affidavits as to the non-residence of the witnesses as provided by statute, and because of the insufficiency of the several notices to take such deposition, they not having been served within a reasonable time, as required by law, and also the deposition of the party in interest without reasonable and proper notice, and without an express order of the court, and was therefore a nullity, and could not be the basis of legal and proper evidence. The question raised by this assignment of error appears to have been definitely settled by this Court by the case of *Abbott* v. *L'Hommedieu*, 10 W. Va. 677 (first point of syllabus), where it is held that "the true purpose and intent of the thirty-fourth section of chapter 130 of the Code of 1868, in providing for an affidavit, is complied with, if it appears by the deposition of the witness whose deposition was taken, or other evidence, that the witness whose deposition was taken resided out of the State or was out of it in the service of the State," *etc.*, "at the time the deposition was taken." The section of the statute referred to in this decision is section 34 of chapter 130 of the Code of 1868, and is also found in section 34 of chapter 130 of Code of 1891, and provides that on affidavit that a witness resides out of the State, or is out of it in the service thereof or of the United States, his deposition may be taken, *etc.;* and as we have seen in the case of *Abbott* v. *L'Hommedieu*, *supra*, such affidavit is unnecessary if it appears by the deposition of the witness or by other evidence that such witness resided out of the State; and it clearly appears from the depositions that each of these witnesses was a non-resident of this State at the time his deposition was taken, and it also appears that said J. S. Plumley, whose deposition was taken in the case, was a nonresident of this State at the time by his sworn answer in the cause. There is therefore nothing in the exception based on the fact that no affidavit was made

before said depositions were taken, and the notices to take such depositions appear to have been given a reasonable time before the same were taken.

It is further claimed to be error in the court to have allowed the depositions of J. S. Plumley and Robert B. Plumley to be retaken after exceptions had been sustained to their depositions. This, however, we regard as in accordance with the rules of practice; and this Court held in the case of *Vance* v. *Snyder*, 6 W. Va. 26 (fourth point of syllabus,) that "it is not error in a court of equity to give a party leave to retake depositions which the court upon an exception determines cannot be read, for want of sufficient notice, at the term at which it is so determined." Barton, in his Chancery Practice (section 297), says: "The general rule is that without the leave of the court, and for good cause, a deposition once taken in a case can not be retaken, the object being to compel a full disclosure on the side before the other side proves his case, and to prevent the temptation to perjury that would be offered by giving opportunity to change the evidence to suit the emergencies of the case. But the courts possess much latitude in permitting a second examination; and, where the circumstances of the case and justice require it, an order for the second examination of the same witness will be made, which, unless it was palpably improper to grant, an appellate court will not for this cause reverse the decree, citing *Fant* v. *Miller*, 17 Grat. 188. In accord with these views, it has been held not to be error to allow depositions to be taken which the court, upon exception, determines can not be read for want of sufficient notice, the order to retake being made at the term at which the matter was determined."

The fourth assignment of error relied upon by the appellants is claimed to have been as to the action of the court in allowing the sheriff to amend his return of the service of the notice to take the deposition of W. G. Bartholow, after the deposition had been taken upon an irregular and insufficient notice. Upon this question Barton, in his Law Practice (volume 2, p. 1087), says: "When a false return has been made by a mistake, the courts are liberal in allowing officers to amend their returns, and this has been permitted after notice of a motion against the sheriff

founded on the original return." See 2 Tuck. Bl. Comm. p. 371; also 1 Bart. Law Prac. p. 275, § 88, where it is said: "After service is once made, there can be, of course, no amendment of the facts of service, but if what has been done has been incorrectly stated in the return, or if all has not been stated that ought to be, the law is liberal in allowing the return to be amended so as to conform to the facts." And again, in the case of *Capehart* v. *Cunningham*, 12 W. Va. 750, it was held that it is not error for the court to permit the sheriff to amend his return upon a summons, even at the hearing of the motion to reverse the judgment, and such amended return relates back to and takes the place of the original return. We therefore hold that the circuit court committed no error in allowing the sheriff to amend his return on the notice to take the deposition of W. G. Bartholow in this case.

This disposes of the errors formally relied upon, with the exception of the fifth one, which claims that the decree was contrary to the weight of the evidence and the justice and equities of the cause as established by the proof, which final assignment brings us to the consideration of the merits of the cause, and upon an examination of the testimony it is clear to me that the circuit court committed no error in reaching the conclusion it did upon the facts proven. The witness W. G. Bartholow in his deposition positively identifies the defendant William Devaughn as the man who came to his office in the city of Marietta, and acknowledged the deed which the plaintiff is seeking to have canceled and set aside as fraudulent and void. He further says that this man Devaughn came to his office in the court house in the city of Marietta, Ohio, representing himself to be J. S. Plumley, and presented the deed and acknowledged the same before him as clerk of the court of common pleas, and he certified the acknowledgment on that date under the seal of said court; and he further states that Exhibit B., in the record, appears to be a copy of said original deed. This was on the 18th day of October, 1890. That he saw him again in June, 1891, on the streets in Parkersburg, W. Va., and recognized him as being the same man who acknowledged the deed before him in October, 1890, and then learned that his name was William Devaughn. Again, in September, 1891,

during the session of the criminal court of Wood county, he saw him several times during two days, while his trial was in progress, and recognized him as the same man who acknowledged the deed before him in 1890. That he was there as a witness on the part of the State on the trial of said William Devaughn on indictment for uttering and employing as true the deed above referred to, knowing the same to be forged, and that he is certain said Devaughn is the same man who acknowledged said deed. J. S. Plumley in his deposition positively denied that he executed any such deed to Nancy Devaughn, or that he authorized any one else to execute it, or that he was in Marietta, Ohio, during the month of October, 1890; and, when asked what his physical condition was at that time, replied that he was blind, and could not have gone there. It is also shown by Robert Plumley, Harvey P. Williamson, and Amos Williamson, who were neighbors of said J. S. Plumley, in Chester County, Pa., that they reside very near said J. S. Plumley, and that during the month of October, 1890, he was at his home in Pennsylvania, and could not have made the trip to Marietta, Ohio, without their knowledge. My conclusion, therefore, upon the case presented by the evidence, is that the circuit court committed no error in holding the deed from J. S. Plumley to Nancy Devaughn, mentioned in the bill, to be fraudulent and void, and that the same passed no title to said Nancy Devaughn, and that said pretended conveyance is a cloud upon the plaintiff's title to said land, and removing the same as such. The decree complained of is therefore affirmed, with cost and damages to the appellee.

*Affirmed.*