MARY I. TREVEY *et al. v.* BLAIR J. LINDSEY *et al.*

(No. 9217)

Submitted February 3, 1942.  Decided March 10, 1942.

*Walter A. McGlumphy,* for appellants.
*Martin Brown,* for appellees.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Marshall County by Mary I. Trevey and others as trustees of Ebenezer Methodist Episcopal Church of Clay District, Marshall County, appellees, against Mary Virginia Mason and John Mason, Jr., her husband, appellants, and others for the purpose of removing as a cloud upon the title of appellees to one and fifty-eight one-hundredths acres of church property located upon what is commonly called in that neighborhood "Roberts Ridge," a certain deed dated November 3, 1928, from John K. Lindsey and Blassa A. Lindsey, his wife, to J. C. Conner, Clark Conner, J. W. Cunningham, Otis Trevey, and J. M. Cecil, Trustees, etc., purporting to convey a lot lying within the boundaries of the one and fifty-eight one-hundredths acre parcel and adjoining on the south the land, title to which is claimed by appellants. The decree complained of granted the relief sought, thus holding that the plaintiffs had established their title to the entire boundary affected as against the claim of the appellants, John Mason, Jr., and Mary Virginia Mason, his wife, to a small quadrilateral boundary lying at the northwest corner and comprising less than one-sixth of the boundary of like kind containing one and fifty-eight one-hundredths acres. The small boundary claimed by appellants appears upon a plat filed with the bill of complaint as "Exhibit B", and upon the legend of that plat is marked "X" and will be so referred to in this opinion.

In the answer to the bill of complaint filed by the ap-

pellants, they assert that they are vested with the fee simple title to parcel "X", and that they and their predecessors in title have held open, notorious, hostile, visible and exclusive possession thereof continuously for more than ten years prior to the institution of this proceeding, and deny and call for strict proof of the alleged dedication of the boundary of one and fifty-eight one-hundreths acres. They expressly disavow claiming title in any part of the "meeting house lot" outside the parcel marked "X".

The trial chancellor overruled demurrers to both the bill of complaint and to the answer of John Mason, Jr., and Mary Virginia Mason, proof was taken in the form of depositions, and a final decree granting the relief sought was entered. The bill of complaint was taken for confessed as to the other defendants, so that any reference to their interests will be only incidental.

The assigned points of error briefed, argued and submitted are five in number: (1) That the trial chancellor erred in overruling the demurrer to the bill of complaint and entertaining a cause, the primary purpose of which was to try title to real estate; (2) in entertaining the cause the court gave undue weight to simulated grounds of equity clearly unsupported by proof; (3) the court erred in disregarding the uncontradicted testimony to the effect that appellants and their predecessors in title had acquired title by adverse possession to the land in dispute; (4) the court erred in holding that the appellants were trespassers and in enjoining them from trespassing on parcel "X"; and (5) the court erred in holding that the appellees, Trustees, etc., are vested with the legal title to parcel "X", and that they are entitled to the possession thereof.

We think the two first questions can be disposed of by referring to Code, 51-2-2, which deals with the jurisdictions of Circuit Courts, and in confirming their general jurisdiction uses the following language: " * * * of all cases in equity, including jurisdiction in equity to remove any cloud on the title to real property, or any part thereof, or any estate, right or interest therein, and to determine

questions of title with respect thereto, without requiring allegations or proof of actual possession of the same; * * * ." Certainly the language quoted is not intended to substitute chancery jurisdiction for the action of ejectment, and where conflicting claims of title depend upon the determination of issues of fact resort must still be had to the law side of the court. *Pocahontas Coal, etc., Co. v. Bower,* 111 W. Va. 712, 718, 163 S. E. 421. As to the simulated ground for equitable relief, inasmuch as the bill contains material allegations which we believe justified its entertainment, the presumption, which we think has not been overcome, is that the trial chancellor considered the unnecessary averments only by way of surplusage.

The remaining three points of assigned error all rest upon a claim of title gained by adverse possession and, therefore, constitute a virtual admission, for the purposes of this proceeding, of the title derived by the plaintiffs by virtue of dedication. We will not discuss the circumstances which constituted that dedication more than to say that in our opinion the testimony offered shows clearly a dedication of the entire boundary to the use of Ebenezer Methodist Episcopal Church for religious and cemetery purposes.

Dealing then with the hostile possession of appellants and their predecessors in title, we believe that this record shows by a clear preponderance that beginning some time in the year 1927, J. K. Lindsey, then vested with the underlying paper title to the parcel marked "X", subject to whatever title the defendants had acquired by dedication, and to the adjoining land to the north and west, constructed a fence on the line between parcel "X" and the public road which ran through the western part of the meeting house lot, and also built a fence between the immediate church lot and parcel "X" at the south. These two fence lines put all of parcel "X" within Lindsey's larger boundary as a part thereof. At approximately the same time Lindsey cleared the entire boundary of parcel "X" of briars, undergrowth and weeds and proceeded to put it in use as a part of his pasture land, although there were some seventeen trees growing on it planted in part

by the trustees. It remained uncultivated. After having taken possession of parcel "X" in that manner, Lindsey executed the deed under attack as a cloud on title, conveying to the trustees the fee in the immediate church lot lying south of parcel "X", the delivery and acceptance of which was denied by three of the then five trustees.

Since the deed from Lindsey, if accepted as other than a conveyance of the underlying reversionary title following a common law dedication, would have been a circumstance inconsistent with the prior ownership of the fee of the same boundary by the grantees, and, by implication, of their preceding title to the entire boundary, even though not accepted, its execution and recordation, we believe, operate as proof indicating that at that time, coupled with his fencing and use of parcel "X", he was exercising notorious, hostile possession of the latter boundary. We are not passing upon the question of whether Lindsey was then vested with an underlying or reversionary title to any part of the meeting house lot, but are stating simply that the deed is relevant as relating to the hostility of his possession under inclosure of parcel "X".

We think the testimony shows plainly that the fences constructed by Lindsey were maintained continuously until the institution of this cause, and that his possession and that of his successors in title of parcel "X" remained undisturbed with the exception of two attempts to erect fences on the outer boundary line of the meeting house lot which is the same line as the outer boundary of parcel "X", and is to be distinguished from the two lines upon which Lindsey had built fences. On the first occasion posts were attempted to be placed upon one of the lines and upon Mason's return he instructed the person doing the work to go no further and his request was complied with. The second attempt was immediately preceding the institution of this suit in December, 1938, and got no further than the putting up of a few posts. Attention is again directed to the fact that neither of these attempts amounted to an interference with the Lindsey, or Mason's, inclosure and that neither was permitted to break the continuity of its possession. Neither attempt can be considered

as breaking the hostile possession of Mason to parcel "X", but can be considered only as an effort to begin a counter possession on the part of the trustees. We are of the opinion that Mary Virginia Mason and John Mason, Jr., are vested with title in fee simple to the parcel marked and identified in this record as parcel "X", and, therefore, that complainants failed, as to their interest, to make the showing of paramount title required to entitle them to the relief sought.

As we have already said, upon the showing of this record the trustees acquired the right to use for religious and cemetery purposes the entire meeting house lot, and that it was so used by them for several decades. The boundary marked "X", however, was not used to bury the dead, so that it is not necessary to consider the difficulty which arose in *Ritter* v. *Couch,* 71 W. Va. 221, 76 S. E. 428, 42 L. R. A. (N. S.) 1216. The question of passing upon the nature of the title conferred upon the donee by a dedication for religious purposes has not been raised in this case, nor do we consider it necessary to pass upon it. In order to do so, we would have to distinguish between the rights conferred by dedication at common law which, according to our understanding, conferred only a use, and the rights acquired by a dedication governed by statute which, of course, would be what the statute provided. See *Deepwater Ry. Co.* v. *Honaker,* 66 W. Va. 136, beginning at the bottom of page 143, 66 S. E. 104, 27 L. R. A. (N. S.) 388, and the 1923 Code, chapter 57, section 1, which was the statute applicable at the time of this dedication.

Another question not raised nor considered below is whether the public or *quasi* public use of property to an extent sufficient to sustain a dedication thereof, would also operate to prevent title thereto from being gained by adverse possession. The trend of decided cases in this country is to regard church property as not being pervaded by public use to the extent that would justify it being looked upon as public property so that it is not subject to adverse possession. We have no West Virginia case directly in point. But the case cited above, *Deep-*

*water Ry. Co.* v. *Honaker,* 66 W. Va. 136, 66 S. E. 104, 27 L. R. A. (N. S.) 388, definitely decides that church trustees may gain title by adverse possession and, although the converse does not necessarily follow, we believe it persuasive enough to have us now say that a church may lose its real estate by adverse possession.

For the foregoing reasons, the decree of the Circuit Court of Marshall County is reversed and the cause remanded.

*Reversed and remanded.*