THE PUTNAM COMPANY

*v.*

W. L. FISHER *et al.*

*and*

THE PUTNAM COMPANY

*v.*

B. E. JONES *et al.*

(No. 9689)

Submitted September 5, 1945.   Decided December 11, 1945.

*Emmet Horan* and *J. Howard Hundley,* for appellants.

*Blue, Dayton & Campbell, Harry V. Campbell, Brown, Jackson & Knight, John C. Morrison, Frank Lively, A. D. Duduit* and *E. S. Bock,* for appellees.

LOVINS, PRESIDENT:

These suits having been consolidated and heard together, come to this Court by appeal from a final decree of the Circuit Court of Kanawha County. The Putnam Company, allegedly owning a fee simple estate in the oil and gas underlying the northeast one-half of a 9700-acre tract of land, brought a suit against W. L. Fisher and, as far as can be ascertained from the pleadings, one hundred seventy other persons as defendants. Another suit against B. E. Jones and eight other defendants was also instituted. Poca Coal Land Company, Dorothy S. Johnson, H. S. Johnson, her husband, Godfrey L. Cabot, Inc., and Columbian Carbon Company, although named as defendants, are actually co-plaintiffs and in some instances hereinafter will be designated as co-owners. Other defendants in these suits claim interests in the land adverse to plaintiff, and will be hereinafter referred to as adverse claimants or defendants. Dorothy S. Johnson and H. S. Johnson filed an answer in the nature of a cross-bill, alleging ownership of the surface of the 9700-acre trace, and an amended and supplemental answer in the nature of a cross-bill to enjoin one hundred fifty-three of the adverse claimants from cutting timber on the land they claim. Poca Coal Land Company filed its answer in the nature of a cross-bill, making all of the adverse claimants parties defendant. In addition to

the one hundred sixty-one adverse claimants made defendants to the answer and cross-bill of Poca Coal Land Company, nine other persons were named defendants therein. The answer of Poca Coal Land Company prayed for an injunction to enjoin the nine additional persons named therein from interfering with Godfrey L. Cabot, Inc., in drilling operations on the land claimed by Poca Coal Land Company, but no other relief was sought against said nine defendants.

In the suit of The Putnam Company against B. E. Jones, et al., B. E. Jones, Velcie Jones, Ed Mathews, May Mathews, Mahala Boggess, Wilson Boggess, Dollie Boggess, Lafe Harrison and Gladie Harrison were made defendants. In this suit a bill substantially similar to that in the suit of The Putnam Company against W. L. Fisher, et al., was filed, to which bill of complaint B. E. Jones, Ed Mathews, and Wilson Boggess demurred. Upon the demurrer being overruled, Jones, Mathews and Boggess answered. Plaintiff filed a special replication to said answer. Dorothy S. Johnson and H. S. Johnson, her husband, also filed an answer in the nature of a cross-bill in this suit. No other pleadings were filed in the suit of The Putnam Company against Jones, et al.

The gravamen of the bills of complaint and pleadings by co-owners filed in these suits is that the Putnam Company, Poca Coal Land Company, and Dorothy S. Johnson are the fee simple owners of the surface and the minerals in and underlying a 9700-acre tract of land under lease for oil and gas purposes to Godfrey L. Cabot, Inc., and that deeds of conveyance for parts of said tract have been made by persons having no title thereto to other persons who now claim parts of said tract of land. Defendants in the suit of The Putnam Company against Fisher demurred to plaintiff's bill on the grounds that it alleges many things in which they have no interest, and that the bill was unnecessarily intricate and prolix. Defendants interposed another demurrer on the grounds that the bill of complaint failed to show sufficient facts to warrant the exercise of equitable juris-

diction, plaintiff having an adequate remedy at law, and that plaintiff's bill of complaint failed to show that plaintiff was in actual possession of the land described in the bill of complaint. Both demurrers were overruled, and the action of the court in so ruling is not questioned by an assignment of error. Defendants in the suit of The Putnam Company against Fisher by their answer averred that the land claimed by plaintiff and its co-owners is not located within the exterior boundary lines of the Jabel tract, a part of which plaintiff and its co-owners claim, and that all of the land in controversy is within two grants made to Thomas A. Taylor, assignee of Henry Banks, and senior to the grant of the Jabel tract. Defendants also allege that their title is based on adverse possession by them for more than ten years. Two joint and separate answers were filed: one by George Harrison and W. L. Fisher and the other by W. V. Pritt, Lakie Pritt and W. L. Fisher. The joint and separate answers set up in substance the same defense: That the lands in controversy are not within the Jabel tract; that all of said lands are within the senior grants to Taylor and adverse possession. Plaintiff replied specially, in writing, to the two joint and separate answers. In the suit of The Putnam Company against Jones, et al., Jones, Mathews and Boggess rely upon adverse possession for the statutory period, aver that the lands claimed by plaintiff are not a part of the Jabel tract, and deny that they were tenants of Poca Coal Land Company or Dorothy S. Johnson.

It would unduly prolong this opinion to detail the various allegations and prayers of the pleadings filed in these suits. There are some irregularities in the pleadings which do not affect the merits of the contentions here made, and hence we make no mention thereof. Suffice it to say that an examination of the record discloses that the trial court had jurisdiction of all parties adversely affected by its final decree.

The Commonwealth of Virginia by letters patent, bearing date March 3, 1796, granted to Samuel Hollingsworth a tract of land in Kanawha County, lying between

Pocatallico River and Eighteen-Mile Creek, branches of the Great Kanawha River, known as the "Jabel Tract", containing 100,000 acres. There was excepted from said grant six tracts lying within the Jabel tract, which had been previously granted, aggregating 2690 acres. The record does not disclose the devolution of the title of the grant or the outsales by various owners.

In the year 1905 a tract of land of 27,570 acres, allegedly within the exterior boundary lines of the Jabel tract, was owned in fee by McLean, Dakin and Spafford, who, by several deeds, conveyed title thereto to Albert E. Humphreys. Humphreys and wife conveyed said tract to F. W. Abney and Albert E. Humphreys, trustees. Abner and Humphreys, trustees, either conveyed or contracted to convey to W. A. Ohley 9700 acres of the 27,-570-acre tract, but whether the conveyance to Ohley was actually made is not disclosed by the record. On the 19th day of May, 1908, Humphreys and wife, Ohley and wife, and Humphreys and Abney, trustees, conveyed the 9700-acre tract to Poca Coal Land Company, reserving the oil and gas underlying the northeast one-half of said 9700-acre tract. The conveyance to Poca Coal Land Company described the lands conveyed by metes and bounds, and excepted certain tracts theretofore conveyed. The descriptions of the land conveyed and the exceptions were based on a survey and plat made by John S. Cole in the year 1908. Cole surveyed the exterior boundary lines of a tract of land containing 20,-051.61 acres, and platted tracts within said boundary lines, which reduced the acreage to 9700 acres. Cole also projected a line dividing the 9700-acre tract equally. Humphreys and Abney, trustees, retained the ownership in fee of the oil and gas underlying the portion of the 9700 acres lying to the northeast of said projected line. The Putnam Company, by deed bearing date the 1st day of February, 1936, acquired the ownership of the oil and gas underlying the northeast one-half of the 9700-acre tract so reserved, and in addition acquired the oil and gas underlying the residue of the 27,570-acre tract

not included in the conveyance to Poca Coal Land Company. By deed bearing date September 1, 1939, Poca Coal Land Company conveyed the surface of the 9700-acre tract to Dorothy S. Johnson. The Putnam Company and Poca Coal Land Company by leases bearing date the 1st day of February, 1936, and the 24th day of April, 1936, leased the entire 27,570-acre tract to Godfrey L. Cabot, Inc., and said lessee by lease bearing date the 19th day of July, 1939, subleased a portion of the land to Columbian Carbon Company.

Hereinafter we are concerned only with the 9700-acre tract, title to which at the time of the commencement of these suits was as follows: The Putnam Company owned the oil and gas in fee underlying the northeast one-half of the said 9700-acre tract; Poca Coal Land Company owned the oil and gas in fee underlying the southwest one-half thereof, as well as a fee simple estate in all minerals other than oil and gas underlying the entire tract; and Dorothy S. Johnson owned the surface of the entire tract. A number of producing gas wells had been drilled on the northeast half of the 9700-acre tract prior to the commencement of these suits. Plaintiff and its co-owners insist that the 9700-acre tract is within the exterior boundary lines of the Jabel tract, and that no part thereof is within the boundaries of the two grants made to Taylor, assignee of Banks, hereinafter mentioned. Adverse claimants insist that the land claimed by them is not within said Jabel tract, and therefore plaintiff and its co-owners have no right to the land claimed by them. The adverse claimants also contend that the lands claimed by them are within the boundary lines of two grants of 1040 acres and 5398 acres made to Taylor, assignee of Banks, both grants being senior to the grant to Hollingsworth.

In an effort to resolve these contentions relative to the location of the land in controversy, plaintiff and the defendants caused partial surveys of the Jabel tract and of the two senior Taylor grants to be made. They ex-

hibited a number of maps and documents, and took numerous depositions.

The location and termini of the lines of the Jabel tract from the beginning corner to a walnut and buckeye corner near Eighteen-Mile Creek are not seriously controverted. Plaintiff's surveyor located the walnut and buckeye called for in the original grant on Jake's Run, a small tributary of Eighteen-Mile Creek, and defendants' surveyor located said walnut and buckeye 160 poles farther to the northwest on a small tributary of Eighteen-Mile Creek, known as Flat Branch. At this point there is a vitally important disagreement between the surveyors. The next call in the original grant of the Jabel tract in part is as follows: "thence turning up with the right hand branches of the Eighteen Mile Creek, north forty five degrees east two thousand three hundred and seventy-two poles to a hickory and sugar tree on a Creek running out of the survey. * * *" Defendants' surveyor stated that he could not run this line in accordance with the course called for in the original grant and remain on the right side of Eighteen-Mile Creek. Therefore, he followed the meanders of said Eighteen-Mile Creek to a point near Cherry Fork, a tributary of Eighteen-Mile Creek, and thence up said Cherry Fork to a point on a small tributary of Cherry Fork known as Stumpy Run. He then went to a point marked three lynns on Jarrett's Branch, tributary of a stream designated on his map as the left fork of Pocatallico River and ran a straight line in a northwesterly direction to the point on Stumpy Run. He then platted the other calls from the three lynns on Jarrett's Branch back to the beginning point. The surveying and platting done in support of defendants' claim in an effort to locate the lines of the Jabel tract resulted in reducing the acreage of that tract from 100,000 acres to approximately 43,080. Defendants' surveyor prepared a map based on the surveying and platting done by him, which depicts the Jabel tract as an elongated tract of land of entirely different shape from that shown by other maps of said tract hereinafter

mentioned. He attributes his failure to run the line from the walnut and buckeye to the hickory and sugar tree on a course of N. 45° E. to the fact that to run the line on the courses and distances called for in the original grant would depart from the right hand branches of Eighteen-Mile Creek, and further that he was directed to survey in such manner by defendants. Defendants' surveyor, disregarding his survey, prepared a plat at request of plaintiff in accordance with the courses and distances set forth in the grant of the Jabel tract, which plat delineates a boundary of land hexagonal in shape, as shown by other maps of said tract hereinafter mentioned.

Plaintiff's surveyor ran the line N. 45° E. (allowing for variations N. 50° 30′ E.) 2308 poles from the walnut and buckeye corner to a point on a tributary of Mud Lick Fork of Thirteen-Mile Creek. After crossing Eighteen-Mile Creek a short distance from the walnut and buckeye this line is located on the left side of Eighteen-Mile Creek for the entire distance. Plaintiff's surveyor testified that he found the water crossings called for in the original grant located on the ground approximately as called for in the grant, with the exception of one water crossing which was not specified in the grant. He also testified that he talked with a number of persons residing in the neighborhood, who pointed out to him the line of the Jabel tract; that he found an old fence approximately twenty thousand feet along said line; that he found a set stone at Peach Grove School House ostensibly on said line; and that he found a buffalo or deer lick at approximately the point shown on the original map of the Jabel tract. He made no survey of the other lines of the Jabel tract, but prepared a plat showing said lines as called for in the original patent. The result of his survey and platting portrays the Jabel tract as having approximately the same shape, acreage and lines as those shown on the original map of said tract. If the surveying and platting done for plaintiff are correct, the disputed lands are within the exterior

boundary lines of the Jabel tract. On the contrary, if the surveying and platting done in behalf of defendants are correct, said lands are outside the boundary lines of the Jabel tract.

In support of the survey and plat made by its surveyor, plaintiff introduced, among others, a photostatic copy of the original map of the Jabel tract, a photostatic copy of a map showing partition of the Jabel tract and two other tracts made about the year 1849, said tracts having been owned by Mathias Bruen and others. Plaintiff also introduced a copy of Swann's Title Map. The exterior lines and shape of the Jabel tract, as located and shown on the maps introduced by plaintiff, are similar to the exterior lines and shape of said tract as delineated by the surveying, platting and testimony of its surveyor. Swann's Title Map also shows that the 5398-acre tract granted to Taylor, assignee of Banks, interlocks with the Jabel tract, and that a military grant senior to the other grants herein mentioned interlocks with the 5398 Banks grant.

Considerable surveying was done and oral testimony introduced in an effort to locate the grants of 1040 and 5398 acres made to Taylor, assignee of Banks. It seems that the northern portion of the 5398 acres is within the boundary lines of the Jabel tract and that the 1040-acre. grant is entirely within said boundary lines. The northern line of the 5398-acre grant was located by defendants' surveyor approximately three thousand feet north of the location contended for by plaintiffs. The western portion of the north line of the 5398-acre grant and all the southern line of the 1040-acre grant are common lines. In locating the north line of the 5398 grant and the southern line of the 1040 grant, defendants' surveyor started at a point in a line of the military grant, and ran the full distance called for in the original patent for the 5398 acres, apparently ignoring the interlock of the said 5398-acre grant with the military grant. When the interlock of the 5398-acre grant is considered and the westerly boundary lines of the 5398-and 1040-acre grants

392

are surveyed in accordance with the descriptions thereof in the patent from a point within the military grant, the northern line of said 5398-acre tract and the southern line of the 1040-acre grant are located approximately as contended by plaintiff. A grant to Preston Trotter located to the west of the two Taylor grants is definitely located, and when the location of the Trotter grant is considered in relation to the disputed lines of the Taylor grants it tends to support the location contended for by plaintiff. The location of the southern line of the 1040-acre grant and the northern line of the 5398-acre grant, as claimed by plaintiff, is supported by the testimony of its surveyor and three other surveyors, who are familiar with the lines of said grants and their location. According to plaintiff's evidence the disputed boundary lines of the Taylor grants are partially indicated by cleared lands and fences, which have been regarded by owners of land in that vicinity as showing the correct location of said lines.

An examination of the evidence in this case clearly discloses that the exterior boundary lines of the Jabel tract, as well as the 1040-and 5398-acre grants to Taylor, assignee of Banks, are properly located with such degree of certainty that the efforts of the defendants to show different locations are wholly unavailing. The oral testimony of defendants' surveyor shows that he ignored calls in the title papers and surveyed in some instances as directed by defendants.

In the interval between 1906 and 1908, John S. Cole, a surveyor, went on the land and surveyed portions of the 9700-acre tract of land in controversy, and made a map thereof, which is filed as an exhibit herein as "Cole Revised Map". A comparison of the Cole Revised Map and Cole's testimony with the maps made by plaintiff's surveyor shows that the latter has substantially followed in the footsteps of Cole in making the surveys, and in locating the lines here considered.

Eleven adverse claimants attempted to prove adverse possession. Such persons occupied the land by virtue of

leases to them by Poca Coal Land Company, or derived their claim to the land from other persons who had been tenants of said company. There is evidence to the effect that the leases in question were signed under the coercion of F. M. Ray, agent for Poca Coal Land Company, who threatened to evict them unless such leases were signed.

It is alleged and the evidence tends to prove that W. L. Fisher, one of the adverse claimants, hearing it rumored that the location of certain boundary lines of the Jabel tract were in doubt and that there was a defect in the titles of plaintiff and its co-owners, procured the services of a surveyor who made surveys at different places on the lands of plaintiff, and thereafter that Fisher procured the execution, acknowledgment, and recordation of deeds of conveyance. In many instances the deeds were executed by relatives, who allegedly had no title to the land, and in others were executed by neighbors who likewise are claimed to have had no title. Eighty-nine of the grantees in turn executed deeds conveying to Fisher an undivided one-fourth interest in the oil and gas underlying the tracts of land ostensibly conveyed to them. Four of the adverse claimants did not execute such deeds, but leased the oil and gas to a different person, not a party to this suit.

The trial chancellor held, *inter alia*, that a court of equity has jurisdiction herein; that the lands in controversy lie within the exterior lines of the Jabel tract, but not within the boundary lines of the 1040-and 5398-acre senior grants made to Taylor, assignee of Banks; that all adverse claimants were either tenants of Poca Coal Land Company, or held in parity with someone who had been a tenant, including the eleven defendants who introduced evidence attempting to show adverse possession; that W. L. Fisher influenced defendants to execute the deeds sought to be cancelled in this suit; that the eighty-nine tracts in the suit of The Putnam Company against Fisher, et al., and the four tracts in the suit of The Putnam Company against Jones, et al., aggregating about 5591 acres, are parts of the 9700-

acre tract, the greater part of which larger tract lies in Kanawha County and a small part in Jackson County, and that said tract of 9700 acres was accurately described in the deed from Albert E. Humphreys, et al., to Poca Coal Land Company; that plaintiff is the owner of the oil and gas, with proper mining rights, in that part of the said 9700 acres lying northeast of the oil and gas line projected by Cole, surveyor; that Dorothy S. Johnson is the owner of the surface of said 9700 acres; that Poca Coal Land Company is the owner of all minerals, except oil and gas in the northeast part of said 9700 acres, and of all minerals, including oil and gas, lying southwest of the line projected by Cole, surveyor; that The Putnam Company, Poca Coal Land Company, and Dorothy S. Johnson own the entire legal and equitable title to said tract of 9700 acres; and that their title is derived from the patent made to Hollingsworth, granting the Jabel tract of 100,000 acres; that the oil and gas underlying the 9700-acre tract has been leased to Godfrey L. Cabot, Inc., under two separate leases, one dated February 1, 1936, executed by The Putnam Company, and one dated April 24, 1936, executed by Poca Coal Land Company; that the said Godfrey L. Cabot, Inc., has acquired possession of the oil and gas by drilling wells on said leased premises and continues in possession thereof; that none of the adverse claimants has drilled for oil or gas upon said 9700 acres, or any part thereof; that none of the adverse claimants has paid any taxes upon the land claimed by them; and that they had no deeds for said land until 1939. It was decreed that the ninety-three deeds to adverse claimants, as well as all the deeds purporting to convey one-fourth of the oil and gas to W. L. Fisher be cancelled, set aside, and held for naught, excepting, however, that portion of three tracts claimed by B. E. Jones, Ed Mathews, and Wilson Boggess which lie outside of the 9700-acre tract as shown by the Cole Revised Map; that injunctions against Fisher and his co-defendants and injunctions against Jones and his co-defendants be perpetuated; that the injunction awarded Dor-

othy S. Johnson and H. S. Johnson be perpetuated; that writs of possession be awarded to Dorothy S. Johnson for the surface of the 9700-acre tract; and that defendants pay costs.

Defendants challenge the jurisdiction of a court of equity to resolve the questions presented by this record. If the plaintiff has a clear legal title and possession, equity has jurisdiction, independent of statute, to remove a cloud from title. *Tennant's Heirs* v. *Fretts,* 67 W. Va. 569, 68 S. E. 387. See Hogg's Equity Procedure, Miller, 3rd Ed., Section 125; and 4 Pomeroy's Equity Jurisprudence, 5th Ed., Section 1398. The following quotation from the opinion of this court in *Hansford* v. *Rust,* 107 W. Va. 624, 150 S. E. 223, is pertinent: "It is well settled in this State that equity has jurisdiction to enjoin trespass to real estate and remove cloud where it appears that the plaintiff has clear title and is in possession and that the defendant has neither title nor possession." See also *Gas Co.* v. *Townsend,* 104 W. Va. 279, 139 S. E. 856; *Coal & Coke Co.* v. *Bragg,* 75 W. Va. 70, 83 S. E. 190; *Electric Co.* v. *Montgomery,* 70 W. Va. 754, 74 S. E. 994. This Court has upheld the jurisdiction of equity to cancel a title paper void on its face at the suit of a person in possession and having good title. *Whitehouse* v. *Jones,* 60 W. Va. 680, 55 S. E. 730. Formerly actual possession of a plaintiff in a suit to remove cloud on title was indispensable to maintenance of the suit. *Logan* v. *Ward,* 58 W. Va. 366, 52 S. E. 398.

Code, 51-2-2, confers jurisdiction "in equity, * * * to remove any cloud on the title to real property, or any part thereof, or any estate, right or interest therein, and to determine questions of title with respect thereto, without requiring allegations or proof of actual possession of the same; * * *." By virtue of the statute a plaintiff out of possession may maintain a suit to remove cloud on title. *Pocahontas Coal & Coke Co.* v. *Bowers,* 111 W. Va. 712, 163 S. E. 421; *Lumber Co.* v. *Lumber Corp.,* 110 W. Va. 262, 157 S. E. 588.

Defendants say that the evidence in this case as to location of the land in controversy presents an issue of fact cognizable only in a court of law. This contention presents two questions: (a) Are the lands in controversy within the exterior boundary lines of the Jabel tract; and (b) are said lands, or any part thereof, within the senior Taylor grants of 1040 and 5398 acres? As noted above, the surveyors for plaintiff and defendants were in practical agreement in locating the lines of the Jabel tract until they reached the walnut and buckeye located on a small tributary of Eighteen-Mile Creek. We quote for convenience the next course and distance called for in the original grant: "thence turning up with the right hand branches of Eighteen Mile Creek, north forty five degrees east two thousand three hundred and seventy-two poles to a hickory and sugar tree on a Creek running out of the survey". The plaintiff's surveyor followed the course; defendants' surveyor adopted the directory portion of the call and attempted to run the line up Eighteen-Mile Creek so that it would touch the right hand branches thereof. This Court has noted the distinction between "directory" calls and "locative" calls. *Stockton* v. *Morris*, 39 W. Va. 432, 441, 19 S. E. 531. We consider that part of the call directing the line to be run with the right hand branches of Eighteen-Mile Creek as directory, and the course as locative. The course, being locative in character and conflicting with the directory portion of the call, controls in this instance. *Cates* v. *Reynolds*, 143 Tenn. 667, 228 S. W. 695. The right hand branches of Eighteen-Mile Creek are not natural monuments in the true sense, as here designated, but the deer or buffalo lick found by plaintiff's surveyor at approximately the same location shown on the original map of the Jabel tract is a natural monument. The location of the line as surveyed by plaintiff's surveyor is sustained by the fact that fences are located for an approximate distance of twenty thousand feet along the line as surveyed by him. It is likewise supported by reputation as to its location, as testified by plaintiff's surveyor. *Pulp & Paper Co.* v. *J. Natwick*

& *Co.*, 123 W. Va. 753, 21 S. E. 2d 368. Another element to be considered is: If the exterior lines of the Jabel tract are located as contended for by defendants, it would reduce the acreage thereof more than one-half, and would distort the shape and size of the Jabel tract as shown on the original map and other maps thereof. *Day* v. *Wood Lumber Co.*, 78 W. Va. 19, 88 S. E. 452. The survey made on behalf of defendants narrows the Jabel tract, reducing its width more than one-half. All of the maps of the Jabel tract made prior to the commencement of these suits show that the Jabel tract is hexagonal, its breadth and length being approximately equal. The location of the exterior lines of the Jabel tract made on behalf of defendant is not authorized by any muniment of title, nor is it sustained by a proper survey and the testimony. Upon consideration of the testimony of the surveyor who attempted to locate the exterior lines of the Jabel tract for defendants, we see no real issue between plaintiff and defendants as to the location of said lines. This clearly appears when the defendants' surveyor made a map platted according to the courses and distances designated in the original grant of the Jabel tract. Said map substantially conforms to all other maps introduced in evidence, except the one relied on by defendants.

The next question of location relates to the two senior patents of 1040 and 5398 acres made to Taylor, assignee of Banks. A part of the northern line of the 5398-acre grant forms the southern line of the 1040-acre grant. The western line of the 5398-acre grant extended northerly on the same course is the western line of the 1040-acre grant. When the northern line of the larger tract is located with certainty, the southern line of the smaller tract is likewise located, and the location of the western line of the 5398-acre grant determines the beginning point and course of the western line of the 1040-acre grant. Plaintiff's surveyor went on the ground and located the lines of the grants by partial surveys, by fences, and in some instances by marked timber. Plaintiff

contends that the northern line of the larger grant and the southern line of the smaller grant are located approximately three thousand feet south of the location contended for by defendants. The testimony of the defendants' surveyor shows that he surveyed the western line of the 5398-acre grant, and that he ran said line beginning at a point in the northerly line of the military grant, ignoring the interlock of the 5398-acre grant with the senior military grant, and ran said western line the entire distance called for in the Taylor grant. A grant made to Preston Trotter was definitely located. The location of the lines of the Trotter grant tends to show that the locations made by plaintiff of the northern and western lines of the two Taylor grants are correct. Plaintiff's location of the two lines of the Taylor grant is corroborated by the testimony of witnesses Weaver, Withrow and Sell, who are familiar with the location of the lines of said grants, because of the interest of their employers in gas-producing lands within said grants and in the vicinity thereof. There is another element which shows that the locations made by the plaintiff of the lines of these two grants are correct. John S. Cole in the year 1908 made a survey of the 9700-acre tract, the results of which, together with plats made by Cole, are depicted on the Cole Revised Map. An examination of the Cole Revised Map and consideration of Cole's testimony shows that the plaintiff has located the northern and southern lines of the two grants and the western lines thereof at approximately the same places as they were located by Cole in the year 1908.

Evidence for plaintiff is strong, clear and convincing. The testimony of defendants' surveyor clearly shows that he located lines as directed by defendants, and in most instances without reference to muniments of title. There is no real issue as to the location of the exterior lines of the Jabel tract, or the location of the lines of the senior Taylor patents. We think that the evidence in behalf of plaintiff and its co-owners is such that no doubt exists that plaintiff has located the lines of the

Jabel tract and two senior Taylor patents with reasonable certainty. A court of equity having jurisdiction may determine a legal question in a suit to remove cloud on title. *Trevey* v. *Lindsey*, 124 W. Va. 130, 19 S. E. 2d 613.

We conclude that the lands in controversy are within the exterior boundary lines of the Jabel tract, and that no part thereof, as claimed by plaintiff and its co-owners, are within the senior Taylor grants of 1040 and 5398 acres.

The plaintiff at the time these suits were instituted being in possession of the oil and gas underlying the northeast one-half of the 9700-acre tract through its lessee, could not maintain ejectment to vindicate its possessory rights thereto. *Gas Co.* v. *Cabot*, 96 W. Va. 387, 122 S. E. 922; *Gilbert* v. *McCreary*, 87 W. Va. 56, 104 S. E. 273; *Steinman* v. *Vicars*, 99 Va. 595, 39 S. E. 227; *Kennedy Coal Corp.* v. *Buckhorn Coal Corp.*, 140 Va. 37, 124 S. E. 482. Being deprived of an adequate remedy at law, The Putnam Company could come into a court of equity to preserve and protect its title. It will be noted that the gas underlying the Poca Coal Land Company's one-half of the 9700-acre tract was not reduced to possession until after this suit was brought, and we do not mean to say that the same rule would apply to Poca Coal Land Company's right to resort to equity.

There is another distinct ground of equity jurisdiction. Where a cloud on title has been created by fraudulent conduct, equity may do complete justice between the parties, notwithstanding that the effect of a decree may be to remove deeds as clouds upon the title of plaintiff. *Koen* v. *Koen*, 86 W. Va. 503, 103 S. E. 322; *State* v. *King*, 77 W. Va. 37, 87 S. E. 170; *McConnell* v. *Rowland*, 48 W. Va. 276, 37 S. E. 586; *Hoopes* v. *Devaughn, et al.*, 43 W. Va. 447, 27 S. E. 251; *Davis* v. *Settle, et al.*, 43 W. Va. 17, 38, 26 S. E. 557; *Chapman* v. *Delk*, 178 Va. 113, 16 S. E. 2d 379; 36 A.L.R. 698, Note. It is significant that W. L. Fisher, one of the de-

fendants herein, heard rumors of defects in the title of plaintiff and its co-owners, and that he employed a surveyor to make surveys along lines and to objects pointed out by defendants, and that thereafter deeds containing descriptions of the lands as so surveyed were executed by relatives and neighbors of defendants, and thereafter placed of record. Defendants have paid no taxes and apparently made no claim of title to the lands until shortly before the commencement of this litigation. It is also significant that in eighty-nine instances, Fisher received conveyances from some of defendants for one-fourth of the oil and gas underlying said lands. This situation is a basis for belief that defendants attempted to base their alleged titles on rumor and supposition, and tends strongly to show a fraudulent effort to acquire valuable land without paying the purchase price therefor. If defendants' claims were *bona fide*, an investigation of the public records, coupled with the necessary surveying, would have determined whether the lands belonged to plaintiff and its co-owners, or whether defendants owned such lands. We conclude that the claims of defendants are so tainted with fraud that a court of equity has jurisdiction of this cause on that ground alone, and that as an incident to that jurisdiction such court may cancel the deeds constituting clouds on the titles of plaintiff and its co-owners thus doing complete justice between the parties.

Do plaintiff and its co-owners have legal title? Plaintiff and its co-owners deraign their titles from the conveyance by McLean, Dakins and Spafford to Humphreys in the year 1905. In view of the relationship of landlord and tenant existing between. Poca Coal Land Company, Dorothy S. Johnson and defendants, the rule requiring the plaintiff to trace its title to the State or a common source is inapplicable. *Summerfield* v. *White*, 54 W. Va. 311, 321, 46 S. E. 154. Plaintiff's title, as alleged in the bill of complaint, is not denied in the answers of defendants. Defendants rely upon the fact that the lands in controversy are not within the boundary line of

the Jabel tract, and are within the two Taylor grants. We have shown that the evidence of defendants in support of that contention is wholly inadequate to sustain it. It is true that eleven defendants attempted to show adverse possession as the basis of their title. But they were either tenants or derived their alleged title from tenants. Moreover, a severance of the oil and gas from the surface as to the northeast one-half of the 9700-acre tract was effected by the conveyance from Abney and Humphreys, trustees, to Poca Coal Land Company. Possession of the surface of land as to which there has been a severance of title to minerals from that of the surface is not possession of the minerals. *Trust Co.* v. *Harless*, 108 W. Va. 618, 152 S. E. 209; *Kiser* v. *McLean*, 67 W. Va. 294, 67 S. E. 725. There is no evidence that defendants have reduced the oil and gas to their possession. Even if defendants possessed the surface for the requisite statutory period after the year 1908, such possession does not suffice to deprive The Putnam Company of its ownership of the oil and gas underlying the northeast half of the 9700-acre tract. Was defendants' possession effective against Poca Coal Land Company and Dorothy S. Johnson? Possession of the tenant is the possession of the landlord and cannot be adverse to landlord as long as that relation exists. A tenant will not be permitted to deny the title of his landlord in the absence of fraud or mistake in the procurement of a lease, and no proof of title is required by the landlord in an action against his tenant. *Voss* v. *King*, 33 W. Va. 236, 10 S. E. 402. The attornment of a tenant to a stranger is void unless the landlord consents, or such attornment is the consequence of a judgment, order or decree of a court. Code, 37-6-4. See *Allen* v. *LaFollette*, 94 W. Va. 700, 120 S. E. 176; *Rosin Coal Land Co.* v. *Martin*, 81 W. Va. 33, 94 S. E. 358; *Stover* v. *Davis*, 57 W. Va. 196, 49 S. E. 1023; *Voss* v. *King*, 38 W. Va. 607, 18 S. E. 762. Defendants in their brief admit that all adverse claimants signed leases, but say they were coerced to do so by an agent of Poca Coal Land Company. This position is untenable. If the defendants knew that

they owned land, the courts were open to them for protection and vindication of their rights, if any they had, and certainly the threat of eviction was not sufficient to coerce them into acknowledging that they did not own the land which they claim to have possessed for many years. Having acknowledged the title of Poca Coal Land Company, they will not be heard to say otherwise on the ground that they were threatened with eviction, no fraud or mistakes being here shown. It is not within ordinary experience that a large number of *bona fide* owners of land would acknowledge the ownership of a person claiming adversely to them because of a threat made by the agent of such person.

A careful examination of the voluminous record herein fails to disclose error in the decree here complained of, and it is therefore affirmed.

*Affirmed.*