# CHARLESTON.

## CAMPBELL *v.* FOX.

Submitted January 25, 1910.   Decided December 20, 1910.

DEEDS—*Delivery—Acceptance.*

   A deed must be both delivered and accepted to operate as a deed.

Appeal from Circuit Court, Kanawha County.

Bill by John T. Campbell against Frances L. Fox and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*W. S. Laidley,* for appellant.

*U. S. Albertson,* for appellees.

BRANNON, JUDGE:

Delilah Campbell, an aged woman, in April, 1905, executed a conveyance to her son, William M. Campbell, for a tract of 50½ acres of land. She went to live at her son William's, and while there made this deed, its consideration being that William would support her during life. It may be that Barbara Campbell, William M. Campbell's wife, was a grantee in the deed. Some two or three weeks after the said deed was made Delilah Campbell got possession of it from her son William and burned it. Later Delilah Campbell sold the land to Frances L. Fox for $100 and made her a deed therefor. A little later William M. Campbell and Barbara, his wife, and Delilah Campbell conveyed this land to another of Delilah Campbell's sons, John T. Campbell. John T. Campbell is in possession of the land, and he brought a suit in chancery in Kanawha county against Frances L. Fox to annul and declare void the deed from Delilah Campbell to Frances L. Fox. Frances L. Fox and her husband filed an answer denying the claim of the plaintiff, denying that Delilah Campbell had ever conveyed the land to William M. Campbell, and setting up the right of Frances L. Fox to the land under her deed, and denying that the alleged deed from Delilah Campbell to William M. Campbell was ever completed by delivery, and asking that the said deed from William M. to John T. Campbell be cancelled. A decree was pronounced dismissing the bill of John T. Campbell and decreeing that the deed from Wiliam M. Campbell and wife and Delilah Campbell to John T. Campbell be declared null and void as against Frances L. Fox. From that decree John T. Campbell appeals.

Counsel relies as a material point in the case upon the legal principle that when once a deed has been made, delivered and accepted the destruction of the deed does not destroy the legal title of the grantee or revest it in the grantor. Such is the law, but this case presents, before we can apply that principle, the question whether the deed from Delilah Campbell to William M. Campbell was finally delivered and accepted. This, of course, depends on oral evidence. The circuit court has found that it was not so delivered and accepted, and before we can reverse this decision we must be well satisfied that it is wrong. The burden of proof is on the plaintiff as to this matter. On that

evidence we have too much doubt to overthrow the decree below. Indeed, we think the evidence is insufficient to establish the finality of the deed. It is true there is a legal principle that when parties meet to make a deed and read, sign and acknowledge it without reservation, this, as a general rule, amounts to delivery. Delivery is complete when there is intention manifested to make the instrument the grantor's deed. *Glade Coal Mining Co. v. Harris,* 65 W. Va. 152. But that case says that delivery is always a question of intention to be determined by the facts and circumstances attending its execution. One reading the evidence in this case must have doubt of delivery. The parties lived in the same house. William M. Campbell did not put the deed on record. It was put in a trunk in the house. It is not definite whose trunk it was, but likely it belonged to the wife of William M. Campbell. The fact that it was not put on record is a circumstance indicating that Campbell did not intend to accept it and assume the burden of his mother's support. He himself says as a witness that his mother on several occasions when neighbors came in would have the deed brought out and request it to be read to *see if it was drawn right,* a circumstance to show that she had not finally delivered it. William M. Campbell says, as do other witnesses say, that the old lady became dissatisfied, and no longer wanted to stay at his house, and that she left his house after a stay of a few weeks and removed her things and went to a daughter's house, and afterwards to another daughter's house, where she died. Evidence goes to show that the wife of William M. Campbell was ill at ease with the old lady and would charge her with being uncleanly, and that the old lady would weep. This daughter-in-law said she was not able to keep the old lady and attend to her. William said that she was disagreeable, and he was going to make her go away. When the old lady told William that she would let Dr. Fox have the place he said, "Well, you do that. Let him have the place. Josephine ain't able to wait on you. Some of. the rest are more able than Josephine is. He said that is just what I want you to do." (Josephine is the middle name of Barbara Campbell.) Now, upon the evidence different persons might come to differing opinions; but upon such an equipoise we cannot reverse. Indeed, we feel that the evidence is not an equipoise. We think it shows that the ar-

rangement was not final, that the son had not accepted the deed, nor had the mother lost control of it. It was always forth-coming when she asked for it. It is proven by the brother of William that William said that the old lady was dissatisfied at his house, and that he intended to give up the deed, and had given it up to the old lady, and that she was dissatisfied and disagreeable. Fox, the husband of Frances L. Fox, swears that William M. Campbell told him that he could not keep the old woman, that his children were an annoyance to her, and that he wished Fox would take the place and keep her, and urged him to buy the farm. There is much evidence tending to show that William hesitated to take the land and keep his mother, and this warrants us in considering that as a circumstance to repel his final acceptance of the deed. On the day when the deed was burnt, as he and his wife both swear, she asked for the deed, and he says that he handed it to her and walked away. The wife says that the old lady burned it, and Norman Campbell, another son, says that on that occasion, as William told him, he said to his mother when he handed her the deed, that if that was what she was dissatisfied about to take the deed. William did not see the deed burnt, but said he·walked away without asking what his mother wanted with the deed. He never asked her thereafter what she had done with the deed. He said when asked why he had not asked his mother about the deed, "I never asked; I thought it was none of my business; she was my mother; she had the deed out of the trunk at differ-ent times." This evidence and some more goes to show that the old lady yet thought that the deed was in her power so far as she was able to think. So long as a deed is within the control and subject to the dominion and authority of the grantor there is no delivery, and there can be no deed. *Gaines* v. *Keener,* 48 W. Va. 56. Fannie Foster, the wife of the notary who wrote the deed and took the acknowledgment of Delilah Campbell, was. present when this deed was made, and signed the name of Delilah Campbell to it. ·She was asked what her husband did with the deed. Her answer was, "He handed it to Will Campbell I think, I am not positive." There is no explicit evidence of delivery. The notary's evidence is not in the case, he being dead. So the evidence falls short of showing delivery of the deed or acceptance by the grantee.

There is much evidence in the case tending to show that William M. Campbell solicited the husband of Mrs. Fox to buy the land and knew that he was going to buy it, and made no protest, and on this evidence counsel for Fox urges that an estoppel *in pais* has been established, that would bar Campbell from claiming to the prejudice of Mrs. Fox. I think this cannot be sustained because the evidence tends to show that Fox knew of the deed, and estopped *in pais* does not operate when the party who relies upon it knows the facts; it operates only when he is ignorant of the truth and is misled by the conduct of the other party. *Atkinson* v. *Plum,* 50 W. Va. 104.

Our conclusion is to affirm the decree.

<div align="right">

*Affirmed.*