# CHARLESTON.

JANET LANNERD et al. v. CURTIS F. BURNAM et al.

Submitted January 10, 1923.    Decided May 15, 1923.

1. EQUITY—*Defense of Laches May be Made by Demurrer, When Sufficient Facts to Predicate Such Defense Appear on Face of Bill.*

    The defense of laches may be made by demurrer when sufficient facts upon which to predicate such defense appear from the face of the bill. (p. 748).

2. TENANCY IN COMMON—*Conveyances by Cotenant Securing Tax Title Will be Avoided, or he Will be Declared Trustee Holding for Their Mutual Benefit.*

    Where a cotenant permits the common property to be sold for taxes, and directly or indirectly secures the title for his sole benefit, conveyances under which he claims will be avoided at the instance of his cotenants, or he will be declared a trustee holding the legal title for their mutual benefit. (p. 749).

3. EQUITY—*Defense of Laches Against Cotenants in Bringing Suit to set Aside Tax, Title Deeds Executed for Benefit of one Cotenant not Sustained on Demurrer, Unless to Disadvantage of Alleged Fraudulent Cotenant.*

    Where it is sought in a suit between cotenants to set aside conveyances for the whole of the common property to strangers under sales for delinquent taxes, and to partition the property according to the original ownership, on the ground that the purchases at such sales and subsequent conveyances

of title thereunder were made for the sole benefit of one of the alleged cotenants, the defense of laches against the co-tenants attacking the transactions and conveyances will not be sustained on demurrer unless it appears from the bill that they, with knowledge of the facts, have slept thereon to the disadvantage of the alleged fraudulent co-tenant. (p. 749).

Case Certified from Circuit Court, Kanawha County.

Suit by Janet Lannerd and others against Curtis F. Burnam and others. The court overruled a demurrer to the bill, and certified questions arising thereon to the Supreme Court of Appeals.

*Affirmed.*

*Smith & Reynolds* and *Graham C. Painter,* for plaintiffs.
*Conley & Johnson, F. B. Morgan,* and *McWhorter & Carney,* for defendants.

LITZ, JUDGE:

This is a suit for the removal of cloud on title to real estate, partition of the lands involved, and an accounting between the parties as cotenants. The circuit court, having overruled demurrer to the bill, "on request of the defendants, of its own motion" certifies to this Court the questions arising on said demurrer.

The bill alleges that John Alexander and Samuel Alexander acquired, by deed of March 2d, 1868, a tract of 328 acres of land known as Lot "C" in the division of the "Steele 27,000 acre survey," situate in Malden District, Kanawha County, West Virginia; that they also acquired by deed of March 3d, 1874, 366 acres of land known as Lot "V" in the division of said "Steele 27,000 acre survey"; that the said John Alexander and Samuel Alexander died intestate, each the owner in fee of an undivided one-half of said lands; that the plaintiffs, seven in number, are cotenants in the ownership of said lands with the defendant, Laura Tilden Wilson, and certain other defendants, all of whom except defendant, Laura Tilden Wilson, possess title as descendents of John Alexander and Samuel Alexander; and that the defendant, Laura Tilden Wilson, owns the interest of her mother, Elizabeth J. Tilden,

who inherited a one-tenth undivided interest in the lands as the granddaughter of Samuel Alexander, under the following deeds: deed dated March 28th, 1873, from Elizabeth J. Tilden and Marcellus C. Tilden, her husband, to Gabriel Haynes; deed of April 5th, 1875, from Gabriel Haynes to Marcellus C. Tilden; deed of October 15th, 1894, recorded July 6th, 1915, from Marcellus C. (M. C.) Tilden to his daughter, Laura Tilden Wilson, (Laura M. Tilden).

The bill further alleges that the lands in question were assessed to J. and S. Alexander from 1875 to 1881, (during which period the taxes were delinquent), but were not assessed to any one for the years 1882, 1883 and 1884; that these lands were sold to the State for delinquent taxes on the 17th day of October, 1877, as the property of J. and S. Alexander, and on the 4th day of December, 1883, redeemed from the State by "M. C. Tilden and others"; that said lands were charged on the land books for taxes from 1885 to 1899 to "M. C. Tilden et al., heirs of J. S. Alexander"; that they became delinquent again for non-payment of taxes for 1895 and 1896, and were on the 7th day of January, 1898, sold for such delinquencies to Isaac Lowenstein, who, pursuant to such sale, obtained from the clerk of the county court of Kanawha county a deed dated January 30th, 1899, and recorded January 30th, 1899, conveying to him the said lands; that by deed dated June 12th, 1899, and recorded June 14th, 1899, Lowenstein conveyed all his right, title and interest in said lands, for a recited nominal consideration of $10.00 cash, with special warranty, to the defendant Laura Tilden Wilson (then Laura M. Tilden); that by a pretended deed dated August 29th, 1904, and recorded September 12th, 1904, said defendant Laura Tilden Wilson (as Laura M. Tilden Ray), fraudulently attempted to convey with special warranty and for the recited nominal consideration of $10.00 cash, said lands to John Donley; that by a pretended deed dated September 1st, 1904, and recorded June 22d, 1908, said John Donley conveyed said lands back to the defendant, Laura Tilden Wilson (as Laura M. Tilden Ray), with covenants of special warranty and for the recited nominal consideration of $10.00 and other considerations; that said Donley paid no valid consideration for said lands and the

deed was made to him by defendant, Laura Tilden Wilson, for the fraudulent purpose of attempting to destroy the cotenancy existing between her and her cotenants, as named in the bill; that by deed of lease dated December 7th, 1912, the defendant Laura Tilden Wilson (as Laura M. Tilden Ray), attempted to lease to the defendant United Fuel Gas Company during a term of three years said lands for oil and gas production, which lease was by writing dated November 15th, 1915, surrendered and cancelled; that the lands were again on the 11th day of December, 1911, sold to L. E. Mc-Whorter for taxes delinquent thereon for the year 1907 in the name of John Donley, and that McWhorter, under his purchase, obtained a deed, dated March 31st, 1913, recorded April 4th, 1913, from the Clerk of the County Court of Kanawha county, for these lands; that by a pretended deed dated August 17th, 1915, recorded August 27th, 1915, L. E. McWhorter and wife attempted to convey said lands with special warranty of title for the pretended consideration of $10.00 and other good and valuable considerations, to one, Iva S. Fowler; that by a pretended deed dated August 21st, 1915, and recorded August 27th, 1915, Iva S. Fowler, of Denver, Colorado, for the pretended consideration of $500.00 attempted to convey with covenants of general warranty of title, the lands to Charlotte G. Williams, unmarried, and of Denver, Colorado; that by deed of trust dated August 23d, 1915, and recorded August 27th, 1915, Charlotte G. Williams attempted to convey the lands to the defendant, Charleston National Bank, of Charleston, West Virginia, Trustee, to secure the payment of a note for $6000.00, executed by Charlotte G. Williams to one, Frank S. Moore, of Denver, Colorado, dated August 23d, 1915, (its maturity not being stated); that said note was indorsed by Frank S. Moore to the Union Health and Accident Company, a corporation, who is now the beneficial owner thereof; that by a pretended deed dated August 24th, 1915, recorded September 3d, 1915, said Charlotte G. Williams, for the consideration of $500.00, attempted to convey said lands to the defendant, The Star Land & Securities Company, a Colorado corporation; that the considerations of $500.00 recited in the last two mentioned

deeds, even if in fact so paid, were grossly inadequate, and the deeds from Iva S. Fowler to Charlotte G. Williams, and from Charlotte G. Williams to said defendant, The Star Land & Securities Company, of which the defendant Laura Tilden Wilson is the principal owner and President, were procured to be made by the defendant Laura Tilden Wilson in pursuance of the fraudulent purpose on her part to destroy and defeat the cotenancy existing between her and plaintiffs and other defendants; that by deed of lease dated October 11th, 1915, the defendant, The Star Land & Securities Company, by the defendant Laura Tilden Wilson, (L. E. Ray), as its President, and defendant Laura Tilden Wilson (Laura M. Tilden Ray) in her own right, attempted to lease for oil and gas said lands to the United Fuel Gas Company.

The lands were assessed for taxes, beginning with the year 1899, as follows:

1899...................Isaac Lowenstein.
1900 to 1904, inclusive—Laura M. Tilden Ray (Laura Tilden Wilson).
1905 to 1908, inclusive—John Donley.
1909 to 1913, inclusive—Laura M. Tilden (Laura Tilden Wilson).
1914 to 1915, inclusive—L. E. McWhorter.
1916 to 1920, inclusive—Star Land & Securities Company.

The bill prays that the deeds from the defendant Laura Tilden Wilson (Laura M. Tilden Ray), to John Donley, from John Donley to the defendant Laura Tilden Wilson (Laura M. Tilden Ray), from the Clerk of the County Court of Kanawha county to L. E. McWhorter, from L. E. McWhorter and wife to Iva S. Fowler, from Iva S. Fowler to Charlotte G. Williams, from Charlotte G. Williams to The Star Land & Securities Company, from Charlotte G. Williams to Charleston National Bank, Trustee, and the lease from The Star Land & Securities Company to United Fuel Gas Company dated October 11th, 1915, be cancelled and set aside, and the defendant, Laura Tilden Wilson, be declared and held a Trustee of the legal title to said lands for herself and the plaintiffs in proportion to the original ownership of the

parties; that an accounting be had; and the lands be par-
titioned in accordance with the respective ownerships alleged
in the bill.

The adverse defendants demurred on the following grounds:

. (1)   The bill shows that the plaintiffs are guilty of laches
in that there is long delay on the part of plaintiffs in asserting
their demands and instituting their suit, and no reason, expla-
nation or excuse is alleged for such delay;

(2)   The plaintiffs in their bills seek to remove a cloud
from title to real estate, and fail to allege that they are in
actual possession of the land in controversy;

. (3)   Plaintiffs have a full, adequate, and complete remedy .
at law;

(4)   Plaintiffs' bill is multifarious.

The demurrer was overruled and the case is certified to
this Court to test the propriety of that ruling.

Counsel for the defendants, in their brief, state: "Having
assigned four grounds of demurrer, we are now of the opinion
that the Second, Third and Fourth grounds are of doubtful
merit, and they are therefore not now insisted upon." In
view of the alleged relationship of cotenancy subsisting be-
tween plaintiffs and defendants, we also see no merit in any
of the last three grounds. It is insisted, however, that the
demurrer should have been sustained to the bill on the first
ground, laches on the part of the plaintiffs in bringing suit.

It is true, as shown by authorities cited, (*Jarvis* v. *Martin's
Admr.* 45 W. Va. 347; *Thompson* v. *Whittaker Iron Company,*
41 W. Va. 574), and *Carter* v. *Price,* 85 W. Va. 744, that the
defense of laches may be made by demurrer to the bill; but, as
stated by Judge RITZ in the case of *Jarrett* v. *Osborne,* 84
W. Va. 559, "The question of when one is barred from assert-
ing an interest in real estate because of laches is one so de-
pendent upon the exact relations of the parties that it will
only be determined upon the demurrer to a bill when the facts
alleged make it clear that the plaintiff, with full knowledge
of the facts, has slept thereon to the disadvantage of de-
fendant."

Except for the alleged relationship of cotenancy existing be-

tween the parties ordinarily the delay shown by the bill would defeat the suit. The parties being cotenants, as alleged, the purchase of the common property at a tax sale, either directly or indirectly, by the defendant Laura Tilden Wilson, would be but a redemption thereof and her holding under the tax deeds, in the absence of such hostile acts of independent claim of ownership brought home to her cotenants in such manner as to constitute an ouster of them from the common property, would not be adverse to her cotenants.

It being as much the duty of one cotenant as of another to pay the taxes, where one, because of common default in this regard makes a purchase at a tax sale, he will be treated as having purchased for all, or as having redeemed for the common benefit of all. *Jarrett* v. *Osborne, supra; Parker* v. *Brast,* 45 W. Va. 399; *Reed* v. *Bachman,* 61 W. Va. 452; *Sommers* v. *Bennett,* 68 W. Va. 157; *Hutchins* v. *Denton,* 83 W. Va. 580; *Guthrie* v. *Beury,* 82 W. Va. 443; *Cecil* v. *Clark,* 44 W. Va. 659.

But the bill makes no allegations of possession of the lands by any of the parties to the suit, and the only acts of ownership by any of the parties are implied payment of taxes, and the execution of two oil leases and a deed of trust to secure the payment of $6000.00, by the hostile defendants. This deed of trust is alleged to have been made for the use and benefit of the defendant, Laura Tilden Wilson, and her corporation, The Star Land & Securities Company.

As the bill in effect charges, defendant Laura Tilden Wilson was the moving spirit for her sole benefit in all the transactions in question, involving sale and conveyance of the common property, and that the title to the lands involved is now vested for her benefit in the defendant corporation, The Star Land & Securities Company; and it not appearing clearly from the facts stated in the bill that by reason of loss of evidence, change of condition of the subject matter, or other causes, those seeking partition of the common property have slept upon their rights to the disadvantage of the defendant Laura Tilden Wilson, we are of opinion that the demurrer should be overruled. This ruling of course will be subject to the merits as developed on the coming in of the

proof, and to any rights of third parties that may have intervened. For this holding, the cases last above cited are referred to.

The ruling of the circuit court on the demurrer is sustained.

*Affirmed.*