MARY J. BENNETT

*v.*

A. H. NEFF

(No. 9780)

Submitted January 29, 1947. Decided April 11, 1947.

W. G. *Brown,* for appellant.

A. N. *Breckinridge* and B. P. *Brown,* for appellee.

HAYMOND, JUDGE:

The plaintiffs, Mary J. Bennett and Cleveland Bennett, her husband, instituted this suit in June, 1943, in the Circuit Court of Nicholas County, to remove, as a cloud upon the title of the plaintiffs to a tract of 39 acres of surface land and a tract of 13 acres of land in fee located in Wilderness District of that county, certain designated deeds under which the defendants, A. H. Neff and Lula Bennett Neff, husband and wife, claim to own and hold interests in those lands. The bill of complaint was filed at July rules, 1943. At the succeeding regular term of the circuit court the defendants filed their answer and cross-bill seeking affirmative relief against the plaintiffs and other designated persons, including Waldo Bennett, who on February 15, 1944, filed his demurrer and his answer to the cross-bill. The plaintiffs also filed a demurrer and an answer to the cross-bill of the defendants.

The case was heard upon the foregoing pleadings and upon depositions filed in behalf of the respective parties. By final decree, entered May 16, 1945, the court overruled the demurrers of Waldo Bennett and of the plaintiffs to the answer and cross-bill of the defendants, granted the plaintiffs the relief prayed for in their bill of complaint and dismissed the cross-bill of the defendants. From this decree the defendants, A. H. Neff and Lula Bennett Neff, obtained an appeal to this Court.

The lands involved in this controversy are parts of a 93 acre tract of land in Wilderness District, Nicholas County, formerly owned by C. H. Champ. He and his wife made a deed, irregular in form and dated December 12, 1888, in

which they designated, in the premises, Louisa F. Bennett, the wife of S. L. Bennett, and all the heirs of S. L. Bennett as the grantee. In the granting clause the grantors convey to the grantee the real estate described in the deed. Louisa F. Bennett and S. L. Bennett, her husband, entered into possession of the land and lived upon it until the death of S. L. Bennett on January 25, 1921. After his death Louisa F. Bennett continued to live upon the land until her death on January 1, 1938. The Bennetts were the parents of seven children, Cleveland Bennett, Waldo Bennett, John William Bennett, Sarah Bennett Kelly, Rebecca Bennett Shuck, Ada Bennett Nutter, and Lula Bennett Neff. On June 1, 1920, and before the death of his father S. L. Bennett, John William Bennett died intestate leaving surviving him his widow and five children.

Some time prior to December 15, 1925, Louisa F. Bennett employed a surveyor to partition and divide the 93 acre tract into separate parcels. Her purpose in so doing was to convey one of such parcels to each of her six living children and the remaining parcel to the widow and the five children of her deceased son, John William Bennett, and to obtain from each of her children a stated annual amount for her support and maintenance during her lifetime. A plat which showed five 13 acre parcels and one 26 acre parcel and divided the tract designated as 93 acres, but which evidently contained only 91 acres, was made and seven separate deeds were prepared. Because of the language in the deed under which Louisa F. Bennett held the land, all the persons affected by the proposed partition entertained the belief that the children of Louisa F. Bennett and the widow and the children of her deceased son owned and held joint interests or estates in the land, and that it was necessary for them and the spouses of those who were married to join as grantors in any deed to the grantee for each of the parcels. It also appears that Louisa F. Bennett required, as consideration in each of the deeds to her children, the payment of $12.00 annually from each grantee for her support and maintenance so long as she lived and a provision to that effect, as part of

the consideration, is incorporated in each of those deeds. Some of her children were willing, others unwilling, to pay that sum.

Seven separate deeds, dated December 15, 1925, were signed and acknowledged by Louisa F. Bennett, and her children and their spouses in each instance in which it was proposed that they should join as grantors of a particular parcel, except Rebecca Bennett Shuck and her husband who refused to sign any of the deeds and the widow and the children of John William Bennett and their spouses whose reason for not signing is not indicated. Five of these deeds were for parcels of 13 acres each and undertook to convey to Sarah Bennett Kelly, Rebecca Bennett Shuck, Ada Bennett Nutter, and Lula Bennett Neff, each a 13 acre parcel as the share of each of them, and to the widow and the children of John William Bennett at 13 acre parcel as his share, in the 93 acre tract. The deed in which Cleveland Bennett was designated as grantee was for the surface of a tract of 26 acres which included, within one boundary, the 13 acre parcel which he would otherwise have received in the partition, and the 13 acre parcel which would otherwise have been allotted to Waldo Bennett, and the deed in which Waldo Bennett was named as grantee was for the minerals underlying the same two parcels which were embraced within the description of the 26 acre tract of surface land.

These deeds, so signed and acknowledged, were given to Cleveland Bennett. The evidence relative to that transaction is not clear. He does not mention that phase of the matter in his testimony. According to the evidence of the surveyor, which is not contradicted, the seven deeds were brought to him by Cleveland Bennett about five or six years before the surveyor testified in the case in February, 1944, and they remained in his possession until the summer of 1943, at which time he returned them to Cleveland Bennett. Five of them, the deeds in which the designated grantees were, respectively, Ada Nutter, Sarah Kelly, Rebecca Shuck, Cleveland Bennett, and the widow and the children of John William Bennett, were produced at the

depositions by counsel for the plaintiffs and all seven deeds were introduced in evidence by counsel for the defendants. None of them was ever recorded and it does not appear that any of them was ever actually received by any of the respective grantees, except Cleveland Bennett and Lula Bennett Neff, whose deed was given to her by Cleveland Bennett. She testified on that subject that she was told that the deeds "wouldn't be much account to record" unless all the parties signed them.

Before the partition was undertaken, the taxes assessed against the 93 acre tract had at times been voluntarily paid by Cleveland Bennett, Waldo Bennett, Ada Bennett Nutter and A. H. Neff. The other children of Louisa F. Bennett, however, refused or neglected to contribute, and the land became delinquent for the taxes assessed against it for the year 1927. At this point, no satisfactory arrangement having been worked out among the children and the grandchildren for the payment of the taxes, and the parties designated in the various deeds dated December 15, 1925, regarding the proposed partition as incomplete and of no effect, the plaintiff, Cleveland Bennett, Waldo Bennett and the defendant A. H. Neff, who represented both himself and his wife, the defendant Lula Bennett Neff, in order to accomplish the partition of the tract of 93 acres by another method, entered into a verbal arrangement by which the land should be allowed to be sold for the taxes. They consented that a man named W. R. Pitsenbarger, who was suggested for that purpose by Cleveland Bennett, should purchase it at the tax sale, and that upon payment by each of the children of Louisa F. Bennett of his or her share of the cost to Pitsenbarger in so purchasing the land, he was to convey to each of them the parcel allotted to each in the partition and which had been described in the deed prepared for each, and that the defendant A. H. Neff should be allowed to purchase and receive a deed for the 13 acre parcel which represented the share of the widow and the children of John William Bennett upon payment by Neff of his share of the cost. Though the evidence is not definite on this point, the rea-

sonable inference is that Louisa F. Bennett, who then lived on a part of the 93 acre tract, and all her children and their spouses were fully aware of the plan. It is not clear whether the widow and the children of John William Bennett who had removed and were absent from the neighborhood knew of it. Louisa F. Bennett, though she lived on the land for nearly seven years after Pitsenbarger obtained a tax deed for the tract of 93 acres, and knew about that deed, interposed no objection to the plan or to his purchase of the land. It is evident that Louisa F. Bennett and those of her children who wanted the proposed partition made effective considered that it had failed of accomplishment because the deeds were not signed by all the grantors and desired that it be effectuated by purchasing the respective parcels from Pitsenbarger after he received a tax deed for the entire tract of 93 acres of land.

Pursuant to the plan, Pitsenbarger purchased and, with his own funds, paid for the 93 acre tract at the tax sale made by the sheriff on December 9, 1929, and by deed dated June 5, 1931, it was conveyed to him by the Clerk of the County Court of Nicholas County. Cleveland Bennett and A. H. Neff were present at the tax sale. The taxes for 1927, with interest and commissions, amounted to $32.15, and the total cost to Pitsenbarger, including additional taxes through 1931, aggregated $244.02. The amount to be paid to Pitsenbarger for a deed for each of the seven shares was $35.00 for each share. He had originally estimated the cost for each share at $25.00. There is evidence to the effect that it was understood among Cleveland Bennett, Waldo Bennett and Pitsenbarger, in the presence of A. H. Neff, before Pitsenbarger bought the land at the tax sale, that for each of the three parcels of 13 acres representing the shares of Cleveland Bennett, Waldo Bennett and John William Bennett, Pitsenbarger should receive $35.00, or the total amount of $105.00. Cleveland Bennett and Waldo Bennett assured Pitsenbarger that they would take from him any part of the 93 acre tract that the others would not take.

The evidence is conflicting as to the right of A. H. Neff, under the verbal arrangement, to pay a share of the costs incurred by Pitsenbarger in purchasing the land at the tax sale and to receive a deed from him for the 13 acres which represented the share of John William Bennett.

The testimony introduced in behalf of the plaintiffs on that point is to the effect that in February, 1931, Pitsenbarger told Cleveland Bennett and A. H. Neff that if they wanted to get any of the land he had purchased they would have to furnish him some money; and that Cleveland Bennett gave him a note, dated February 7, 1931, for $75.00, with security, payable four months after date to the order of the Nicholas County Bank, upon which Pitsenbarger obtained the proceeds from the bank and on which note Cleveland Bennett paid the interest and $50.00 and A. H. Neff paid $25.00 for the Lula Bennett Neff share of 13 acres on June 2, 1931. At the time the note was given, A. H. Neff or Lula Bennett Neff did not say anything about wanting to buy the John William Bennett share or anything about representing his widow or his children; and it was not until December 18, 1931, after Pitsenbarger made a deed, dated December 10, 1931, to Cleveland Bennett for the tract of surface land of 39 acres, which included three 13 acre parcels which represented the shares of Cleveland Bennett, Waldo Bennett and John William Bennett, that the Neffs made any such claims. A. H. Neff complained to Cleveland Bennett in the presence of Pitsenbarger and at that time Cleveland Bennett told Neff that the land was no longer in Pitsenbarger's hands but in his hands and that if Neff wanted the children of John William Bennett to have a deed for that share Neff would have to have his money ready in thirty to sixty days; and that if Neff did so Cleveland Bennett would make them a deed. Neff, however, never produced any money. Later, on July 2, 1932, Neff "pretended to offer" to pay to Cleveland Bennett $35.00 but never did pay him any money. After that Neff had no further conversation with Cleveland Bennett regarding the land, and he never offered to

take any part of the land purchased by Pitsenbarger other that the share of his wife, Lula Bennett Neff.

The testimony produced in behalf of the defendants on that subject is to the contrary. That testimony is, in effect, that on February 7, 1931, Cleveland Bennett and Pitsenbarger called on the Neffs at their home, demanded $25.00 and then gave A. H. Neff until early the next morning to pay it. A. H. Neff obtained a check from another person, dated February 11, 1931, for that sum and offered it to Pitsenbarger in payment of the amount required to obtain a deed from Pitsenbarger for the 13 acres which represented the John William Bennett share. This Pitsenbarger refused to accept. After Pitsenbarger increased the amount for each share to $35.00, he still refused to accept payment from A. H. Neff for the John William Bennett share, and Neff then applied the check and an additional $10.00 on the $35.00 which was paid for the share which was to be conveyed to his wife, Lula Bennett Neff. A. H. Neff continued to insist that Pitsenbarger make a deed to him or to the children of John William Bennett for that share of 13 acres, and on July 1, 1932, he tendered $35.00 in cash to Pitsenbarger and Cleveland Bennett, at Mount Lookout. Pitsenbarger then told him that the tender was too late and that he had sold or conveyed the John William Bennett share.

After obtaining the tax deed for the 93 acre tract from the county clerk, Pitsenbarger executed and delivered these six deeds: A deed to Sarah Bennett Kelly, dated November 12, 1931, for her share of 13 acres of land; a deed to Cleveland Bennett, dated December 10, 1931, for 39 acres of surface land, which in one description included the 13 acre shares of himself and Waldo Bennett aggregating 26 acres and the 13 acre share of John William Bennett; a deed to Waldo Bennett, dated December 10, 1931, for the minerals underlying the 39 acres of surface land; a deed to Ada Bennett Nutter, dated December 10, 1931, for her share of 13 acres of land; a deed to Lula Bennett Neff, dated December 10, 1931, for her share of 13 acres of land; and a deed to Cleveland Bennett, dated April 4, 1935,

for the share of Rebecca Bennett Shuck of 13 acres of land. In this deed she joined with Pitsenbarger as a grantor. Later Cleveland Bennett conveyed the minerals under this parcel of 13 acres to Pitsenbarger. By deed dated April 25, 1941, Cleveland Bennett conveyed to his wife, the plaintiff Mary J. Bennett, 52 acres of surface land which included the 39 acres and the 13 acres which were conveyed to him by Pitsenbarger.

When the deeds dated December 15, 1925, were prepared and signed by the parties who joined in them, Ada Bennett Nutter was living with her mother, Louisa F. Bennett, in the home place which was included in the parcel of 13 acres which represented her share. Cleveland Bennett was living on his 13 acre share and had built a dwelling and placed other improvements on it. Lula Bennett Neff was also living in a house which had been built on the 13 acre parcel which represented her share. Cleveland Bennett resided on the parcel which is included in the boundary of the 39 acres of surface land conveyed to him by Pitsenbarger by the deed dated December 10, 1931, and he has been assessed with and paid taxes on the tract of 39 acres continuously from that time until the year 1942. For the years 1942 and 1943 the taxes have been assessed to and paid by Mary J. Bennett.

The 26 acre tract adjoins the 13 acre parcel owned by Lula Bennett Neff and the 13 acre parcel which represents the share of John William Bennett. That parcel lies between the 26 acre tract and the 13 acre parcel of Ada Bennett Nutter. The Neffs moved to the Nutter land, rented it from Ada Bennett Nutter, and have lived on it since about the year 1928. There are no improvements on the 13 acre share of John William Bennett and it has never been completely enclosed or fenced. Some fences or parts of fences from time to time existed along or near the boundary line which adjoins the Ada Bennett Nutter 13 acre parcel. They were burned by Cleveland Bennett or torn down by A. H. Neff.

As to the actual possession of the 13 acre parcel which

constitutes the John William Bennett share, the evidence is also in conflict.

The evidence in behalf of the plaintiffs on that issue is that Cleveland Bennett, since the date of the deed from Pitsenbarger in December, 1931, has had actual adverse possession of the tract of 39 acres, including the John William Bennett 13 acre parcel, until he conveyed it to his wife, the defendant, Mary J. Bennett, in 1941, and that she has had such possession of it since that date. An orchard approximately two acres in size on a part of the 13 acre parcel near the Ada Bennett Nutter parcel had been fenced, but the fence that enclosed the orchard was burned by Cleveland Bennett in 1940. He has cut timber on it. He built a fence along the division line between the 13 acre parcel and the adjoining Ada Bennett Nutter land in 1932, but this fence was torn down by someone whose identity was not known to Cleveland Bennett. According to the evidence introduced by the plaintiffs, A. H. Neff never had any possession of any part of the 39 acres.

The evidence offered by the defendants on the same subject is that A. H. Neff has had actual adverse possession of the John William Bennett 13 acre parcel since the date of the deeds of December 15, 1925. He took possession by authority of the widow and the children of John William Bennett. He has also paid taxes on it. He has farmed it, used it for pasture, and raised corn and wheat on it. He has traveled a path on the 13 acre parcel in going to the Lula Bennett Neff land from the Ada Bennett Nutter land and has also used apples from the two-acre orchard on it. He tore down the fence which Cleveland Bennett built on the division line between the 13 acre parcel and the Ada Bennett Nutter land. A. H. Neff has no deed for the John William Bennett share which describes it as a separate or entire parcel of land.

After A. H. Neff failed to get a deed from Pitsenbarger for the share of John William Bennett, he obtained a deed, dated July 8, 1932, in which William Bennett, Dorothy Flint, Texie Smales, and Corna Boggs, children of John

William Bennett, are named as grantors, but which is signed only by William Bennett, Dorothy Flint and Texie Smales, for an undivided four-sevenths interest in the 93 acre tract of land. That deed contains the erroneous recital that the grantors are children and heirs-at-law of Louisa F. Bennett and S. L. Bennett and that they inherited their interests from their father and mother. He also obtained a deed, dated July 7, 1932, from Charles B. Bennett, a son of John William Bennett, who was then under twenty one years of age, for an undivided one-twelfth interest in the 93 acre tract of land. The defendants admit in their answer that the interests described in these deeds are incorrect, but they insist that they vest title to the interest of the grantor in the 13 acre share of John William Bennett in the defendant A. H. Neff. After the institution of this suit and while it was pending in the circuit court, the defendant A. H. Neff obtained a third deed dated October 12, 1943, from Corna Snyder and Charles Snyder, her husband, for an undivided one-fifth of the one-seventh interest of her father, John William Bennett, in the 93 acre tract of land. Corna Snyder is the same person who is designated as Corna Boggs in the deed dated July 8, 1932.

By final decree in the case, the circuit court cancelled and set aside the three foregoing deeds as a cloud on the title of the plaintiffs to the tract of 39 acres of surface land and the parcel of 13 acres of land and as a cloud upon the title of Waldo Bennett, a defendant to the cross-bill of the defendants A. H. Neff and Lula Bennett Neff, to the minerals underlying the 39 acres of surface land. In that decree the court made the following findings upon the facts: (1) The deeds from Pitsenbarger to Cleveland Bennett and to Waldo Bennett are valid and subsisting deeds and convey to them the title in the lands free of any claim of the defendants; (2) the deed from C. H. Champ and wife to Louisa F. Bennett, wife of S. L. Bennett, and all the heirs of S. L. Bennett, who was then living, vested the title to the tract of 93 acres in Louisa F. Bennett in fee simple; (3) the children and the grandchildren of

Louisa F. Bennett were not cotenants of the tract of 93 acres of land; (4) the plaintiffs acquired good title to the lands claimed by them by adverse possession under color of title prior to the institution of this suit; and (5) the defendant A. H. Neff is not entitled to the relief prayed for in the cross-bill of the defendants.

In support of their assignments of error, the defendants urge these main grounds: (1) the deeds dated December 15, 1925, were duly executed and delivered by Louisa F. Bennett and passed title to the grantee in each deed; (2) the deeds by Louisa F. Bennett did not destroy the relation of tenants in common among the grantees; (3) the deed from the county clerk to Pitsenbarger vested the title to the tract of 93 acres of land in him as trustee for the grantees of Louisa F. Bennett; (4) the defendant A. H. Neff was a tenant in common with the children of Louisa F. Bennett; (5) the acts of Cleveland Bennett, Waldo Bennett and W. R. Pitsenbarger prior to and in connection with the deeds from Pitsenbarger to Cleveland Bennett and Waldo Bennett for the surface and the minerals underlying the 13 acre parcel were in fact and in law fraudulent as to A. H. Neff; and (6) Cleveland Bennett and Waldo Bennett did not have actual adverse possession of the parcel of 13 acres claimed by the defendant A. H. Neff.

Though not formally assigned as ground of error, the jurisdiction in equity of the circuit court to entertain this suit is challenged in the brief filed upon reargument by counsel for the defendants, A. H. Neff and Lula Bennett Neff. The contention is that the plaintiffs and Waldo Bennett, respectively, do not have actual, but only constructive, possession of the lands from which removal of the alleged cloud upon their title is sought in this suit, and that in the absence of actual possession by the plaintiffs, a court of equity does not have jurisdiction of the cause. The bill of complaint, however, alleges clear title in, and adverse possession by, the plaintiffs, with respect to the lands in suit. In support of their contention the

defendants cite and rely upon the case of *Moore* v. *McNutt*, 41 W. Va. 695, 24 S. E. 682, which holds that equity is without jurisdiction of a suit to remove cloud upon title when the plaintiff has legal title but is not in actual possession of the land. The rule as stated in that case and which formerly obtained in this jurisdiction has, however, been modified by statute. Code, 1931, 51-2-2, confers jurisdiction in equity to remove any cloud on the title to real estate, or any part thereof, or any estate, right or interest therein, and to determine questions of title with respect thereto, without requiring allegations or proof of actual possession of the real estate involved. If the plaintiff has a clear legal title and possession, equity has jurisdiction, independently of the statute, to remove a cloud from title. *Putnam Co.* v. *Fisher*, 128 W. Va. 383, 36 S. E. 2d 681; *Tennant's Heirs* v. *Fretts*, 67 W. Va. 569, 68 S. E. 387, 29 L. R. A. (N. S.) 625, 140 Am. St. Rep. 979. By virtue of the statute, a plaintiff out of possession may maintain a suit in equity to remove cloud on title to land. *Putnam Co.* v. *Fisher*, 128 W. Va. 383, 36 S. E. 2d 681; *Pocahontas Coal and Coke Co.* v. *Bower*, 111 W. Va. 712, 163 S. E. 421; *Flynn Coal and Lumber Co.* v. *F. W. White Lumber Corporation*, 110 W. Va. 262, 157 S. E. 588. The contention of the defendants on this point is not well founded and is rejected.

Before determining whether the deeds dated December 15, 1925, signed and acknowledged by Louisa F. Bennett and by all her living children except Rebecca Bennett Shuck and her husband, and placed in the custody of Cleveland Bennett, were completed by delivery and vested title to the real estate embraced in such deeds in the respective grantees, it is proper to ascertain the character and the effect of the earlier deed made by C. H. Champ and wife to Louisa F. Bennett and the heirs of S. L. Bennett, who was living on December 12, 1888, when that deed was made.

In the premises of the deed from Champ and wife this language appears: "This deed made * * * between C. H. Champ and Sarah Champ his wife * * * of the first part.

and Louisa F. Bennett wife of S. L. Bennett and all the heirs of said S. L. Bennett * * * of the second part." The granting clause states that "the party of the first part doth grant * * * unto the party of the second part" the 93 acres of land described in the deed. When that deed was delivered S. L. Bennett was living. At that time he had no heirs and who his heirs would be at his death could not then be determined. The rule adhered to by the courts generally is that in the absence of a statute which validates such conveyance, a deed or a grant, which describes the grantees as the heirs of a designated living person, is void for the reason that there are no persons in existence who can take under such description as it is impossible to ascertain while a person lives who his heirs will be. A deed by a father and a mother purporting to convey land to the lawful heirs of their son who was then living and had living children is void for uncertainty as to the grantees. In the absence of intent or purpose, disclosed by the instrument or by admissible facts and circumstances revealed by extrinsic evidence, of the grantor to give to the word heirs an effect other than its technical meaning that term may not be construed to mean children of the grantee. *Hickel* v. *Starcher*, 90 W. Va. 369, 110 S. E. 695, 22 A. L. R. 708. Under the holding of this Court in the *Hickel* case, the Champ deed was ineffective to vest title to any interest or estate in the 93 acres of land in any of the children of S. L. Bennett and Louisa F. Bennett as tenants in common or otherwise. By that deed the title passed to Louisa F. Bennett, and by it the children took nothing.

As Louisa F. Bennett was the sole owner of the land, in fee simple, at the time the deeds dated December 15, 1925, were prepared, it was unnecessary, despite any contrary belief entertained by her and by the other persons who signed and acknowledged them, for her children and her grandchildren and their spouses to join as grantors. She was the only person who could convey title to any of the grantees. The signatures of Rebecca Bennett Shuck and her husband were not necessary to complete the parti-

tion of the land among the grantees which Louisa F. Bennett intended to accomplish by her deeds.

Notwithstanding that situation, however, it is evident that the deeds were regarded by Louisa F. Bennett and her children and their spouses who were named as parties to them as incomplete. Louisa F. Bennett acknowledged them on April 5, 1926. Her children and their spouses who signed, acknowledged them as of these dates: Ada Bennett Nutter on April 5, 1926; Sarah Bennett Kelly on May 13, 1926; Waldo Bennett on May 17, 1926; Lula Bennett Neff on August 30, 1926, and Cleveland Bennett on August 30, 1926. On or after August 30, 1926, Louisa F. Bennett gave these instruments to Cleveland Bennett apparently for him to have them completed by obtaining the signatures of the grantors who had not then signed the deeds. They were then unsigned by the widow and the children of John William Bennett and their spouses and by Rebecca Bennett Shuck and her husband, who refused to sign them. None of these persons ever did sign or acknowledge any of the deeds, and in that respect they were incomplete on their face.

Cleveland Bennett evidently kept all of them except the deed in which Lula Bennett Neff was designated the grantee which some time later came into her possession. The evidence does not disclose when that occurred. There is testimony that the deeds were returned to the surveyor who prepared them by Cleveland Bennett about five or six years before the surveyor testified in the case and that he kept them until the summer before he testified in February, 1944. He gave them back to Cleveland Bennett whose counsel produced all of them at the depositions except the deed to Lula Bennett Neff. Though these deeds appear not to have been returned to Louisa F. Bennett during her lifetime, it is clear that none of the grantees named in the deeds regarded them as complete or valid deeds. None of them claimed to own or hold, by virtue of the deeds, the parcels of which they took possession. For this reason Cleveland Bennett, Waldo Bennett and A. H. Neff undertook to have the partition, which they

evidently thought the deeds had not effected, accomplished by means of a tax sale. None of the deeds was ever recorded. None of the grantees ever paid Louisa F. Bennett the annual amount of $12.00 for her support and maintenance which each of the deeds, in which her children were named as grantees, expressly required as part of the recited consideration. Each of her children, except Rebecca Shuck, received and accepted deeds from Pitsenbarger upon payment to him of the sum of $35.00 which they evidently considered necessary to obtain title and ownership of the respective parcels of land which had been surveyed as their proposed shares in the incomplete partition of the tract of 93 acres of land. It is most unlikely that the children of Louisa F. Bennett, who received and accepted deeds from Pitsenbarger for the different parcels, would have pursued the course they adopted if they had believed or considered that any of the deeds dated December 15, 1925, had been delivered or was a valid or effective deed.

The partition of the tract of 93 acres was evidently intended by Louisa F. Bennett as a single transaction which, as the deeds were never signed by all the parties, was not completed in the manner in which she had undertaken to accomplish it. Her attempt to partition the land was frustrated because the deeds were not signed by all the designated grantors. Delivery of a deed is essential to render it effective. Delivery is the final and essential act, without which all other acts and formalities are ineffectual; and a deed takes effect only from its actual or constructive delivery. *Spring Garden Bank* v. *The Hulings Lumber Co.*, 32 W. Va. 357, 9 S. E. 243, 3 L. R. A. 583. Without delivery title does not pass. *Cartright* v. *Cartright*, 70 W. Va. 507, 74 S. E. 655; Ann. Cas. 1914A, 578. The intention of the parties to a deed, particularly that of the grantor, is an essential and controlling element of the delivery of a deed. It is essential to the delivery of a deed that there be a giving of the deed by the grantor and a receiving of it by the grantee, with a mutual intention to pass the title from the one to the other. 16 Am. Jur., Deeds, Section

115. There must be the intent upon the part of the grantor that the instrument shall take effect as his deed. Acceptance of the deed, express or implied, by the grantee is as essential to the validity of the deed as delivery. *Downs* v. *Downs,* 89 W. Va. 155, 108 S. E. 875. A deed must be both delivered and accepted to operate as a deed. *Campbell* v. *Fox,* 68 W. Va. 484, 69 S. E. 1007. When parties meet to make a deed, and read, sign and acknowledge it, without reservation, there is as a general rule, a delivery of the deed. *Glade Coal Mining Co.* v. *Harris,* 65 W. Va. 152, 63 S. E. 873; *Campbell* v. *Fox,* 68 W. Va. 484, 69 S. E. 1007. There is, however, always the question of intention to be determined from the facts and the circumstances attending the transaction. *Campbell* v. *Fox,* 68 W. Va. 484, 69 S. E. 1007.

A deed, however, is not delivered when something remains to be done by the parties who propose to deliver it, or when the delivery is upon the condition that it shall not take effect until executed by all the grantors and it is never executed by all of them. 16 Am. Jur., Deeds, Section 113. See *Creveling* v. *Banta,* 138 Iowa 47, 115 N. W. 598; *Frank* v. *Costigan,* 141 Md. 106, 118 A. 144; 26 C. J. S., Deeds, Section 48. A deed signed and delivered to the grantee upon condition is not the deed of the party signing until the condition is performed. *Newlin* v. *Beard,* 6 W. Va. 110. See *Brown* v. *Cabell,* 111 W. Va. 186, 161 S. E. 438. The rule just stated applies to the deeds dated December 15, 1925. It is evident that they were to be signed by all the grantors, before they were intended to become effective, but some of the named grantors never signed any of the deeds. The reasonable inference to be drawn from the facts and the circumstances shown by the testimony is that they were placed in the possession of Cleveland Bennett upon condition that all the grantors would sign and acknowledge them as some of them had done. That condition was never complied with, and for that reason there was no delivery of the deeds and they did not pass title to the lands described in them to any of the named grantees. Though the tract of 93 acres of land had

been surveyed and divided into six separate parcels for the purpose of partition, no interest or estate was conveyed by any of the incomplete deeds dated December 15, 1925, to any of the children of Louisa F. Bennett, or to the widow and the children of John William Bennett.

The contention of the defendants that A. H. Neff and the children of Louisa F. Bennett and S. L. Bennett were tenants in common at and prior to the time the tax deed for the 93 acre tract of land was made by the county clerk to W. R. Pitsenbarger on June 5, 1931, is devoid of merit. Until that time Louisa F. Bennett was the sole owner of the tract of 93 acres, and none of her children nor the widow and the children of John William Bennett owned any interest or estate in any part of it. Clearly A. H. Neff did not own any interest or estate in any of her lands.

When the verbal arrangement, whether its nature was as contended by Cleveland Bennett or as contended by A. H. Neff, was entered into by Cleveland Bennett, Waldo Bennett, W. R. Pitsenbarger, and A. H. Neff, individually and as the representative of his wife, Lula Bennett Neff, the relation of tenants in common did not exist among any of them. Before the tax deed was made to him, Pitsenbarger owned no estate whatever in any part of the 93 acres. None of them was a tenant in common or a joint owner of that tract of land, and each of them had the legal right to purchase the land at any sale made of it for the delinquent taxes which existed as a lien against the whole and every part of that land. The rule, recognized and declared by numerous decisions of this Court, that a tax purchase of land by or at the instance of a tenant in common who either directly or indirectly secures the title in his own name, may be avoided by his cotenants and held to be a redemption for their benefit, *Cecil* v. *Clark,* 44 W. Va. 659, 30 S. E. 216; *Parker* v. *Brast,* 45 W. Va. 399, 32 S. E. 269; *Lannerd* v. *Burnam,* 93 W. Va. 744, 117 S. E. 682, has no application to the facts of this case. This is neither a case of direct purchase by a cotenant of the common property for taxes nor a case of indirect purchase by a cotenant through a stranger.

The oral agreement among the parties to it whereby Pitsenbarger was to purchase the 93 acres and to convey certain parcels within it to Cleveland Bennett, Waldo Bennett, Lula Bennett Neff and A. H. Neff, either on the terms asserted by Cleveland Bennett or on those insisted upon by A. H. Neff and Lula Bennett Neff, was an oral contract for the sale of land. A contract of that character is within the statute of frauds, Code, 36-1-3, and is, for that reason, unforceable. *Dye* v. *Dye,* 128 W. Va. 754, 39 S. E. 2d 98. The evidence establishes no part performance by A. H. Neff of the oral contract or no conduct upon the part of Cleveland Bennett, Waldo Bennett or W. R. Pitsenbarger which amounts to equitable estoppel which would deny them the right to assert the statute of frauds as a defense to the oral contract. Even if the defense of the statute of frauds be waived by failure to plead it, a mere breach of the oral contract does not, of itself, necessarily amount to either actual or constructive fraud.

The assertion of the defendants that the acts and the conduct of Cleveland Bennett, Waldo Bennett and W. R. Pitsenbarger in connection with and before and after the purchase by Pitsenbarger of the 93 acres of land at the tax sale perpetrated a fraud upon A. H. Neff, is not sustained by the proof. A charge of fraud must be established by clear and convincing testimony. Fraud is never presumed and where it is alleged the facts sustaining it must be clearly proved. *Hunt* v. *Hunt,* 91 W. Va. 685, 114 S. E. 283; *McDonald* v. *County Court of Logan County,* 94 W. Va. 773, 120 S. E. 891; *Sansom* v. *Wolford, et al.,* 60 W. Va. 380, 55 S. E. 1020. Proof of that character is missing in this case.

As previously stated, the evidence as to the nature of the arrangement among Cleveland Bennett, Waldo Bennett, W. R. Pitsenbarger and A. H. Neff is conflicting. According to the evidence offered in behalf of the plaintiffs, A. H. Neff failed to comply with the requirement of the oral agreement to pay his share of the costs to obtain a deed from Pitsenbarger. The evidence produced in be-

half of the defendants is to the effect that Cleveland Bennett, Waldo Bennett and W. R. Pitsenbarger, in violation of the oral agreement, denied him any opportunity to pay his share of the cost, refused to accept his offers of payment, and declined to make or cause to be made the deed for the property to which he claims he was entitled.

Upon these disputed facts the circuit court, by the final decree, which granted the relief prayed for by the plaintiffs, found against the defendants on that issue. The finding of fact of the trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the clear preponderance of the evidence. *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620. As the finding of the trial court on this point does not appear to be either clearly wrong or against the clear preponderance of the evidence it will not be disturbed by this Court.

The plaintiffs rely upon adverse possession of the tract of 39 acres of surface land within the boundary of which is included the surface of the 13 acre parcel, which represented the proposed share of the widow and the children of John William Bennett in the tract of 93 acres of land, under the deed dated December 10, 1931, from W. R. Pitsenbarger to Cleveland Bennett, and the payment by Cleveland Bennett and Mary J. Bennett of all taxes assessed against it for a continuous period of more than ten years before the filing of the cross-bill of the defendants, A. H. Neff and Lula Bennett Neff, in this suit on August 17, 1943, as a ground in support of their claim of ownership of the lands in suit. This position of the plaintiffs the defendants, A. H. Neff and Lula Bennett Neff, vigorously deny. In defense of the claim of the plaintiffs, they say that the plaintiffs have neither legal title to nor adverse possession of the above mentioned 13 acres of surface land.

The evidence is undisputed that Cleveland Bennett was living upon a part of the 26 acres of surface land described in the undelivered deed of Louisa F. Bennett, dated De-

cember 15, 1925, when it was prepared and signed by her; that the tract of 26 acres is within the boundary of the 39 acres conveyed to Cleveland Bennett by W. R. Pitsenbarger by the deed dated December 10, 1931; that he and the plaintiff, Mary J. Bennett, have lived in the dwelling upon the 26 acre tract continuously since the attempted partition of 1925; and that all taxes assessed upon the tract of 39 acres of surface land, including the 13 acre parcel of surface land, have been paid by the plaintiffs Cleveland Bennett and Mary J. Bennett continuously for more than ten years prior to the institution of this suit in June, 1943. It is also not controverted that the deed from W. R. Pitsenbarger to Cleveland Bennett, which describes the 39 acres of surface land, constitutes color of title to that tract of land. It is also pertinent to observe that the defendants do not contend that A. H. Neff ever obtained or now holds any deed which contains a description, by metes and bounds, of the parcel of 13 acres of surface land which is contained within the boundary of the 39 acre tract.

There is, however, a sharp conflict in the evidence as to the character of the alleged possession by the plaintiffs, Cleveland Bennett and Mary J. Bennett, and by the defendant A. H. Neff, during the period which has elapsed from the date of the deed from W. R. Pitsenbarger to Cleveland Bennett, dated December 10, 1931, to August 17, 1943, the date of the filing of the cross-bill of the defendants, A. H. Neff and Lula Bennett Neff.

The defendant A. H. Neff claims possession of the 13 acre parcel from the widow and the children of John William Bennett from the date of the undelivered deed of Louisa F. Bennett of December 15, 1925, in which they are designated as grantees, as their tenant, and that he has had actual possession of it since that date. He has introduced testimony in support of this contention. The plaintiffs have also produced evidence in behalf of their position on the question of their alleged adverse possession. Upon conflicting facts the express finding of the trial court on that issue is in favor of the plaintiffs and against the

defendants, A. H. Neff and Lula Bennett Neff. For the reasons stated and under the authorities cited earlier in this opinion, the finding of the trial court on that point, not being clearly wrong or against the clear preponderance of the evidence, will not be disturbed by this Court upon appeal.

There is no evidence in this case which shows, or tends to show, that any person other than the plaintiffs and A. H. Neff claimed to have any possession of the parcel of 13 acres of surface land located within the boundaries of the 39-acre tract. The finding of the trial court is adverse to the claim of possession of the 13 acre parcel by A. H. Neff. It follows that when Cleveland Bennett entered upon the tract of 39 acres of surface land, under the deed from W. R. Pitsenbarger dated December 10, 1931, which constituted color of title to the entire 39 acre tract, no part of it being in the possession of any other person, he acquired actual possession to the extent of the boundaries contained in that deed. *Adams* v. *Alkire*, 20 W. Va. 480, Syllabus 1; *Greathouse* v. *Linger,* 98 W. Va. 220, 127 S. E. 31; *Ahner* v. *Young,* 84 W. Va. 336, 99 S. E. 552; *Bradley* v. *Swope,* 77 W. Va. 113, 87 S. E. 86; *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288; *Point Mountain Coal and Lumber Co.* v. *Holly Lumber Co.,* 71 W. Va. 21, 75 S. E. 197; *Stover* v. *Stover,* 60 W. Va. 285, 54 S. E. 350; *Robinson* v. *Lowe,* 50 W. Va. 75, 40 S. E. 454; *Jarrett* v. *Stevens,* 36 W. Va. 445, 15 S. E. 177. That possession, under color of title, having continued in him and in his successor in title, Mary J. Bennett, for a period of more than ten years prior to the institution of this suit, is sufficient to establish legal title by adverse possession in the plaintiffs to the tract of 39 acres of surface land, including the 13-acre parcel located within its boundaries, and that title is good against the claims of the defendants, A. H. Neff and Lula Bennett Neff, in this suit.

The claim of the plaintiffs to ownership of the 13 acres of surface land, which represented the proposed share of John William Bennett of the 93 acre tract of land, does

not, however, depend solely upon the acquisition of title by actual adverse possession under color of title. Except in certain situations which do not here exist, when the purchaser of any real estate sold at a tax sale obtains a deed for such real estate from the clerk of the county court he acquires all the right, title and interest therein that were, at the time of the execution and the delivery of the deed, vested in or held by any person who was entitled to redeem. Code, 1931, 11A-3-28; *State* v. *Johnson,* 102 W. Va. 189, 134 S. E. 737. The tax sale gives birth to a new title which is not the same as that of the former owner. *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828. The deed to W. R. Pitsenbarger from the county clerk, dated June 5, 1931, for the tract of 93 acres purchased by him at the tax sale in December, 1929, created a new title in him, hostile to and of no privity with the title of the former owner of the entire tract of 93 acres, of which the 13 acre parcel was a part, and the deed from Pitsenbarger to Cleveland Bennett, dated December 10, 1931, for the 39 acres of surface land, which described the lands by metes and bounds and which included the surface of the parcel of 13 acres, vested title to the land described in that deed in Cleveland Bennett, who in turn conveyed it by valid deed to his wife, the plaintiff Mary J. Bennett. Under these deeds the plaintiff, Mary J. Bennett, is seised and possessed with good and indefeasible legal title to the surface of the 13 acre parcel of land. The validity of the assessment for taxes of the entire tract of 93 acres of land is not challenged by any party to this suit. Neither is the tax deed to W. R. Pitsenbarger, under which the plaintiffs claim title, assailed on the ground that such assessment was invalid.

A. H. Neff has no deed from any of the children of John William Bennett which describes, by metes and bounds, the 13 acres which he claims. The three deeds which he obtained from the children of John William Bennett, whether they do or do not constitute color of title, a question which it is not necessary to decide, did not vest in him any title to the 13 acre parcel. When the three deeds,

dated July 7, 1932, July 8, 1932, and October 12, 1943, were made to A. H. Neff, the grantors in them owned no interest or estate in the 93 acre tract, or any part of it, which they could convey to him and he acquired no valid title from them.

The claim of Waldo Bennett that he holds clear legal title to the minerals underlying the 39 acres of surface is based upon the deed to him from W. R. Pitsenbarger, dated December 10, 1931, in which the 39 acres are completely described by metes and bounds and in which the minerals underlying the surface of the 13 acre parcel are included. There was a severance of these minerals from the overlying surface by the conveyances of the surface and of the minerals by the deeds from W. R. Pitsenbarger to Cleveland Bennett for the surface and to Waldo Bennett for the minerals. As already pointed out, the actual possession of the surface was in Cleveland Bennett. There is no evidence to show that either Waldo Bennett or A. H. Neff ever, at any time since the severance, has had actual possession of the minerals underlying the 39 acres of surface land in the nature of an occupation of or an entry into such minerals. Mere possession of the surface, when it has been severed from the underlying minerals, is not possession of the severed minerals. *Putnam Company* v. *Fisher*, 128 W. Va. 383, 36 S. E. 2d 681; *Central Trust Co.* v. *Harless*, 108 W. Va. 618, 152 S. E. 209; *Kiser* v. *McLean*, 67 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948; *Plant* v. *Humphries*, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N.S.) 558. The three deeds which A. H. Neff obtained from the children of John William Bennett did not vest any title to the 13 acre parcel in him because the grantors in those deeds owned no interest or estate in the 93 acre tract, or any part of it, which they could convey to him. Waldo Bennett, however, received a valid deed, which included the minerals underlying the 13 acre parcel, from Pitsenbarger, and the title which he so acquired, which, as an incident thereof, gave him constructive or legal possession of the minerals, is good against the claims of the defendants A. H. Neff and Lula Bennett Neff.

The deeds from the children of John William Bennett to the defendant, A. H. Neff, purporting to grant various undivided interests in the 93 acre tract of land, of which the 13 acre parcel is a part, though insufficient to convey any title to or interest in that parcel of land, constitute a cloud upon the title of the plaintiffs to the tract of 39 acres of surface land and the parcel of 13 acres of land, and upon the title of Waldo Bennett to the minerals underlying the tract of 39 acres of surface land. Their existence affects the title of the plaintiffs and of Waldo Bennett to these parcels of real estate. The effect of such a cloud is stated in the opinion of this Court in the case of *Whitehouse* v. *Jones,* 60 W. Va. 680, 55 S. E. 730, 12 L. R. A. (N.S.) 49, in these words: "Who can be blind to the fact that a recorded deed manifesting hostile claim is an actual cloud over title, though it turn out to be void. Does it not impair market value or wholly prevent sale? Is it not a constant source of disquietude? Who would buy the land under its ban? You require a purchaser to know, or guess, in advance of decision, that the deed is void." The plaintiffs and Waldo Bennett, having shown clear title to their lands, are entitled to have those deeds set aside and cancelled as a cloud upon their title.

The defendants, A. H. Neff and Lula Bennett Neff, have failed to establish any claim to affirmative relief which they seek by their cross-bill, and the action of the circuit court in dismissing the cross-bill was correct.

The decree of the Circuit Court of Nicholas County, being free from prejudicial error, is affirmed.

*Affirmed.*